12109

STATE v. SHARPE

(135 S. E., 635)

1. JURY—JUROR IN CRIMINAL CASE NEED NOT BE SWORN ON VOIR DIRE WHEN QUALIFICATION IS QUESTIONED.—Though better practice in criminal cases, when qualification of juror is questioned, is to have him sworn on his voir dire, it is not always necessary that this be done.

2. CRIMINAL LAW—JURY—EXAMINATION INTO QUALIFICATIONS OF JURORS IS FOR DISCRETION OF TRIAL JUDGE, AND SUPREME COURT WILL NOT INTERFERE UNLESS DISCRETION IS ABUSED.—Matter of examination into qualifications of jurors is left to discretion of trial Judge, and Supreme Court will not interfere unless there is legal abuse of discretion in passing on qualifications.

3. JURY—JUROR, WITH SAME SURNAME AS DEFENDANT, HELD PROPERLY EXCUSED WITHOUT EXAMINATION ON VOIR DIRE, IN ABSENCE OF REQUEST THEREFOR.—Circuit Court held not to have abused discretion in excusing juror with same surname as defendant without having him sworn on his voir dire, in absence of request therefor.

4. INDICTMENT AND INFORMATION—TIME IS NOT ESSENTIAL ELEMENT OF ABORTION.—Time is not an essential element in the crime of abortion or attempting abortion.

5. CRIMINAL LAW—PROOF OF ACTS ON DIFFERENT DATES TO ACCOMPLISH ABORTION HELD ADMISSIBLE TO SHOW INTENT AND AS CORROBORATION.—Proof of acts of defendant on different dates, in prescribing medicine and using an instrument to accomplish an abortion *held* admissible to show intent and as corroborative circumstances.

6. CRIMINAL LAW—REFUSAL, IN PROSECUTION FOR PROCURING ABORTION, TO PERMIT QUESTIONING WOMAN INVOLVED AS TO WHETHER SHE WISHED DEFENDANT CONVICTED, HELD HARMLESS (CR. CODE 1922, § 25).—Refusal, in prosecution under Cr. Code 1922, § 25, for procuring an abortion to permit questioning of woman involved, as to whether she wished defendant convicted, *held* harmless, in view of previous statement of witness that she had nothing special against defendant.

7. WITNESSES—CROSS-EXAMINATION MUST BE LEFT TO CARE OF TRIAL JUDGE.—Though cross-examination usually should be full and free, it must be left greatly to care of trial Judge.

8. CRIMINAL LAW—MEDICINES ALLEGED TO HAVE BEEN USED IN PROCURING ABORTION HELD PROPERLY ADMITTED, IN VIEW OF SHOWING THAT THEY WERE PROVIDED AND USED UNDER DEFENDANT'S INSTRUCTIONS (CR. CODE 1922, § 25).—In prosecution under Cr. Code 1922, § 25, for procuring an abortion medicines used by woman involved *held* properly admitted in evidence, in view of showing that they were provided and used under instructions of defendant.

9. CRIMINAL LAW—DEFENDANT CANNOT COMPLAIN OF REFUSAL OF STATE WITNESS TO PRODUCE LETTER FROM WOMAN ON WHOM ABORTION WAS ALLEGED TO HAVE BEEN PROCURED, WHERE LATER ALLOWED TO PRODUCE IT.—That State witness, in prosecution for procuring an abortion, after refusing to permit defense counsel to see letter from woman involved, when admitting possession thereof on cross-examination, later produced it, *held* not ground for complaint.

10. CRIMINAL LAW—REBUTTAL EVIDENCE THAT PROSECUTING WITNESS SIGNED WARRANT WITHOUT PRESSURE BEING BROUGHT ON HER HELD PROPERLY ADMITTED.—In prosecution under Cr. Code 1922, § 25, for procuring an abortion, evidence showing prosecuting witness signed warrant without improper pressure being brought upon her *held* proper, where there was evidence tending to show undue influence.

11. CRIMINAL LAW—ANY ERROR IN ADMITTING EVIDENCE HELD CURED BY INSTRUCTION NOT TO CONSIDER IT.—Any error in admitting evidence, showing prosecuting witness signed warrant without pressure being brought on her, *held* cured by instruction not to consider such evidence.

12. CRIMINAL LAW—JUDGE'S STATEMENT TO "ALL PROCEED ORDERLY" WHEN REQUESTED TO ADMONISH SOLICITOR FOR INJECTING OTHER ISSUES HELD SUFFICIENT.—Judge's statement, on sustaining objection, with request to admonish Solicitor not to inject other issues, to "all proceed orderly," *held* to sufficiently inform jury that he thought question was entirely out of order.

13. CRIMINAL LAW—SOLICITOR'S FAILURE TO CALL WITNESS, WHOM HE HAD STATED HE INTENDED TO USE TO CONTRADICT TESTIMONY OF DEFENCE·WITNESS, HELD NOT PREJUDICIAL.—Filure of Solicitor to call witness after stating to defense witness that he intended to contradict his statement that he had attempted to secure dismissal of case by testimony of such witness, *held* not prejudicial to defendant, since it would tend to strengthen testimony given.

14. CRIMINAL LAW—SOLICITOR'S WITHDRAWAL OF QUESTION CURED ANY ERROR.—Solicitor's withdrawal of question asked defendant cured any possible error therein.

15. CRIMINAL LAW—SOLICITOR MAY EXAMINE DEFENDANT AS TO IMPROPER EFFORTS TO SECURE DISMISSAL.—Solicitor may properly examine defendant relative to any improper efforts to have case dismissed.

16. CRIMINAL LAW—SOLICITOR CAN EXAMINE DEFENDANT TO SHOW THAT SHE HAD BEEN ADMITTED TO BAIL AND HAD NOT BEEN INSIDE OF JAIL (CR. CODE 1922, § 25).—Permitting Solicitor to examine defendant, charged with having procured an abortion in violation of Cr. Code 1922, § 25, to show that she had been admitted to bail and had not been inside of jail, *held* proper to show that she had not been treated unjustly or unkindly.

17. CRIMINAL LAW—SOLICITOR HELD PROPERLY PERMITTED TO ARGUE THAT DEFENDANT HAD NOT DENIED PAYMENT MADE TO HER FOR PERFORMING ABORTION, AS TESTIFIED TO BY STATE WITNESS (CR. CODE 1922, § 25).—In prosecution under Cr. Code 1922, § 25, for procuring an abortion, Solicitor *held* properly permitted to argue that defendant had not denied payment for operation as testified to by State witness, in view of fact that defendant had not directly denied it.

18. CRIMINAL LAW—SOLICITOR'S CONTINUING ARGUMENT, AFTER DEFENDANT OBJECTED AND REQUESTED READING OF RECORD, HELD NOT ERROR, WHERE DEFENDANT FAILED TO AGAIN INSIST ON READING OF RECORD.—Where defendant objected to Solicitor's argument, and

demanded record be read, and, on Judge's directing it to be done, stated that time might be saved if Solicitor would admit facts, Solicitor's continuing argument, without further demand that record be read, *held* not error, since Judge might consider defendant did not insist on request.

19. CRIMINAL LAW—CHARGE ON REASONABLE DOUBT HELD CORRECT.— Charge on reasonable doubt, when construed as whole, *held* correct.

20. CRIMINAL LAW—CORROBORATION OF WOMAN, IN PROSECUTION FOR PROCURING ABORTION, MAY COME FROM WORDS OR ACTS OF DEFENDANTS OR FROM CIRCUMSTANCES (CR. CODE 1922, § 25).—Conviction for procuring an abortion, in violation of Cr. Code 1922, § 25, does not depend on some third party seeing crime, but corroboration of woman on whom act was committeed may come from words or acts of defendants or from circumstances.

Conviction for procuring an abortion, in violation of Cr. Code, § 25, does not depend on some third party seeing crime, but corroboration of woman on whom act was committed may come from words or acts of defendants or from circumstances.

Before HENRY, J., Richland, January, 1926.   Affirmed.

Ida E. Sharpe was convicted of procuring an abortion and she appeals.

*Messrs. Frank G. Tompkins and James H. Hammond,* for appellant cite: *Abuse of discretion by Court in ruling juror incompetent because of relationship:* 125 S. C., 281; 118 S. E., 620; 111 S. C., 467. *Amendment of indictment during trial:* Code Crim. Pro., 1922, Sec. 91. *Defendant entitled to have crime charged fully described to him:* Const. 1895, Art. 1, Sec. 13. *Misstatement of date of crime in indictment; where time not of essence of offense:* 88 S. C., 239; 59 S. C., 229; 48 S. C., 384; 45 S. C., 509; 32 S. C., 91; 13 S. C., 389. *Same, where time is essence of defense:* 85 S. C., 284; 80 S. C., 387; 55 S. C., 354; 31 C. J., 418 and 843. *Reasonable doubt defined:* 16 C. J., 993. *Defendant to have benefit of reasonable doubt:* 93 S. C., 502; 29 S. C., 4; 24 S. C., 439; 18 S. C., 514. *Corroboration:* 133 S. C., 147; 130 S. E., 513; 108 S. C., 455;

103 S. C., 210.  *Jury to be warned against conviction on corroborating testimony of accomplice of prosecuting witness:* 85 S. C., 29; 48 S. C., 146; 29 S. C., 113; 26 S. C., 207; 15 S. C., 437; 11 S. C., 285.  *Argument by counsel outside of record ground for mistrial:* 129 S. C., 464; 104 S. C., 365; 94 S. C., 26; 92 S. C., 236; 65 S. C., 243; 26 S. C., 118; 14 F. (2nd), 394; 138 U. S., 361; 2 Enc. Pl. & Pr., 752.  *Questions by prosecution as to other crimes of defendant improper:* 133 S. C., 491; 132 S. C., 362; 128 S. E., 719; 128 S. C., 411; 123 S. E., 260; 120 S. C., 205; 98 S. C., 114.  *Serious doubt as to admissibility of evidence to be resolved in defendant's favor:* 125 S. C., 406; 92 Miss., 728; 17 L. R. A. (N. C.), 291; 16 C. J., 857.  *Court may not rule testimony of witness incompetent without knowing what witness would testify:* 103 S. C., 277.  *Court has no discretion as to admission of competent testimony not merely cumulative.*  125 S. C., 436.

*Messrs. A. F. Spigner, Solicitor,* and *W. D. Dickey,* for respondent, cite: *Each exception must specify the error:* Rule 4 of Supreme Court, 1922, Sec. 6; 110 S. C., 282. *Qualifications of juror left to discretion of Court:* Code Civ. Pro., 1922 Sec. 557; 125 S. C., 286.  *Misstatement of date of crime in indictment harmless if time not of essence of crime:* 120 S. C., 280; 86 S. C., 297; 48 S. C., 384.  *Question of variance must be raised in trial Court:* 40 S. C., 555.  *Failure to charge on special feature of law no error unless charge requested:* 110 S. C., 281; 34 S. C., 49. *Assignments of error must not be repeated:* 122 S. C., 69.  *Conduct of cross-examination is within discretion of Court:* 88 S. C., 98; 85 S. C., 570; 77 S. C., 50; 73 S. C., 386.  *Attitude of witness toward defendant immaterial:* 120 S. C., 280.

November 26, 1926.

The opinion of the Court was delivered by Mr. JUSTICE BLEASE.

In an indictment found on January 7, 1926, by the grand jury of Richland County, the defendant-appellant, Ida E. Sharpe, was charged with the violation of Section 25 of the Criminal Code 1922, in that she did "administer to" a certain named woman, "then with child, and did prescribe and procure for said" (the one named) "certain drugs and medicines, and did employ and use, and did advise the use and employment of certain instruments and means of force with intent to cause and procure an abortion and premature labor; * * * and that by reason of the use of the said drugs, medicines, instruments, and force the said" (the named woman) "was caused to have a miscarriage and premature labor, against the form of the statute in such case made and provided and against the peace and dignity of the State."

The defendant having pleaded not guilty, the case came on for trial in the Court of General Sessions for Richland County, before his Honor, J. K. Henry, presiding Judge, and a jury. The verdict was "guilty," and thereupon the defendant was sentenced to serve from $2\frac{1}{2}$ to 5 years in the state penitentiary and to pay a fine of $2,000.

The defendant has appealed to this Court, and the "transcript of record" sets out 26 exceptions, but one of the exceptions, the eleventh, was abandoned. The exceptions complain of errors as to impaneling the jury, regarding matters of testimony, the charge of the Judge, the conduct of the Solicitor, and as to failure to grant a new trial. In many instances, two or more of the exceptions relate to the same matter. We shall not take up the exceptions seriatim, but will group them and treat some of them together.

As to juror:

Exceptions 1 and 25 charge error because a certain juror, whose surname is the same as that of the defendant, was excused by the Court. Without ex-

amination on his voir dire, the prospective juror stated that he was not kin to the defendant "of his knowing," but that he had heard that there was a "far-off relation on his father's side"; that, although he did not know the defendant or her husband, he recognized the relationship, and, that he would "protect his name." When the Court announced that the juror would be excused, one of the attorneys for the defendant stated that he objected to the juror being excused on those grounds, and asked that his objections be noted. There was no request that the juror be sworn on his voir dire. While it is perhaps the better practice in criminal cases, when the qualification of a juror is questioned, that he shall be sworn on his voir dire, yet it is not always necessary for this to be done. The matter of the examination into the qualifications of jurors is left very much to the trial Judge. *State v. Carson*, 131 S. C., 42; 126 S. E., 757. Unless there is a legal abuse of the discretion of the presiding Judge in passing upon those qualifications, this Court will not interfere. *State v. Mittle*, 120 S. C., 526; 113 S. E., 335; *State v. Faries*, 125 S. C., 281; 118 S. E., 620. Our circuit Judges should be very careful to keep off juries persons who are related to the parties, or who, in any manner, have an interest in the result of the cause. We see no error in the action of the circuit Judge in this matter.

As to matters of testimony:

(a) The date set forth in the indictment as to the time when the offense occurred was June 1, 1925.

The woman, upon whom the abortion was alleged to have been effected, and W. R. Roddy, admitted to have been responsible for her pregnancy, gave testimony, tending to show that the offense was committed, or attempted to have been committed, on August 24, August 28, September 1, and about December 1, 1925. The defendant at first objected to proof as to any offense on a date other than June 1st. When the Court held that time was not of the essence

of the offense, the defendant then urged that the State should
he held down to proof as to only one offense at a certain
time, and that no testimony should be introduced as to
offenses at other times; in other words, that the defendant
should only be tried for one specific offense. The presiding
Judge ruled the evidence competent, and his doing so is made
the basis of exceptions 2, 3, 7, and 20. The evidence for the
prosecution was to the effect that, to accomplish the desired
object, the defendant used a certain instrument on August
24th, that she prescribed medicines on August 28th, again
used an instrument on September 1st, and prescribed medi-
cines about December 1st. There was no proof on the
part of the State as to any act of the defendant, to carry out
the purpose sought, on June 1st. The circuit Judge was cor-
rect, and so much seems to be conceded by the appellant that
time is not an essential element in the crime of abortion
or attempted abortion. We think the evidence as to the
visits of the "woman" to the defendant at various times, and
as to the happenings at those times, was competent, for at
least two reasons: First to establish the intent of the de-
fendant (*Sullivan v. State,* 121 Ga., 183; 48 S. E., 949);
and, second, as corroborative circumstances in the case.

(b) The "woman" was asked, on her cross-examina-
6, 7 tion, "Do you want to see Mrs. Sharpe convicted?"
The question was not allowed, and the fourth excep-
tion charges error therein. The defendant's position is that
an answer to this question might have shown the attitude of
the witness toward the defendant. Just before being asked
the quoted question, the witness had testified, in response to
a question by defendant's counsel, that she had "nothing
special" against Mrs. Sharpe. While it is true cross-exam-
ination should usually be full and free, such examination
must be left very much to the care of the trial Judge. We
do not think there was any prejudicial error to the defend-
ant, because the Court ruled the question improper. If the

witness had answered "yes" to the question, in all probability the jury would have reached the conclusion that the witness wished the defendant convicted, because witness knew defendant was guilty. If the answer had been "no," the jury may have determined that, in spite of the desire of the witness that the defendant be acquitted, yet the witness was giving truthful testimony. Accordingly, in any event, we do not see how an answer to the question propounded could have benefited the defendant. The desire of a witness to have one convicted or acquitted may sometimes cause the witness to testify falsely, but many witnesses will testify truthfully without regard to their own personal desires. In view of the fact that the witness had already stated that she had "nothing special" against the defendant, and, as we do not see how the answer to the proposed question would have affected the result of the cause, we hold there was no harmful error.

(c) The Court permitted the State to introduce in evidence a box of quinine and a bottle of ergot, alleged to have been used by the "woman." It is contended that there was no evidence to show that these had been furnished by the defendant, but to the contrary that they had been provided by Roddy. The admission of these medicines is charged as erroneous rulings in exceptions 5 and 8. There was some testimony that the defendant, when Roddy was present, gave to the "woman" "some little black pills out of a bottle" and instructed the "woman" to take one of them three times a day, and that the defendant poured these into Roddy's handkerchief; that the defendant told the "woman" also to take some quinine, and, because of this advice, Roddy procured the quinine for her; that the defendant told Roddy to get ergot for the "woman," and that, following her directions, he purchased the drug and turned it over to her; that the medicines introduced were used under the directions of the defendant. We think there was sufficient evidence to go

to the jury on the question, if the drugs introduced were provided and used under the instructions of the defendant.

(d) While Roddy was on the stand, he admitted to counsel, on cross-examination, that he had in his pocket a letter written to him by the "woman." Defendant's attorneys demanded that he allow them to see this communication, but Roddy refused their request, and the trial Judge held that he had the right to do so. On the following morning Roddy agreed to let the defendant's attorneys have the letter, and it was introduced in evidence. The defendant insists, in her exception No. 6, that there was error in not requiring the witness to produce the letter when he was first requested to do so. We think the letter must have been the one the witness had all the time. We do not see how he could have had a worse letter. He testified that it was the same letter. There is no proof to the contrary. Since the defendant had the benefit of the use of the letter, we do not see how she can now complain.

(e) The ninth exception alleges error in allowing the Solicitor to ask a witness questions, the responses to which went to show that Sheriff Heise had not forced the "woman" to swear out a warrant against the defendant, when there was no testimony to warrant the introduction of this evidence. It is urged that these questions and their answers constituted material damage to the defendant, as they were calculated to prejudice the jury against the defendant on account of their friendship for the Sheriff, a very popular official. We do not find error in the question of the Solicitor along the line indicated, for the reason that, on the cross-examination of the "woman," the defendant had brought out the fact that Sheriff Heise had asked her if she would sign a warrant, and she was asked, on such examination, if Mr. Heise had not brought her a warrant already written out against Roddy, with the request that she sign it. We agree with counsel for the appel-

lant that there was no intention on their part to reflect up-
on Sheriff Heise's conduct, but some of their questions did
indicate that the "woman may have been unduly pressed by
some one to sign the warrant against the defendant." And
there was some evidence that Sheriff Heise had been active
in the matter. The Solicitor had some reason to think that
the defendant was endeavoring to create the impression that
undue influence had been used, and he was within his rights
in showing clearly to the jury that the warrant had been
signed by the "woman" without improper pressure being
brought upon her. In any event, however, the error, if
any, was sufficiently corrected by the instructions of the
presiding Judge to the jury that they should not consider any
evidence about the signing of the warrant.

(f) The twelfth and twenty-third exceptions refer
to a question asked by the Solicitor, on his cross-ex-
amination of a colored woman, who was a witness
for the defendant. The witness had been employed as a
nurse by the defendant in the hospital operated by her.
Her testimony was full of attempted evasions to the ques-
tions propounded by the Solicitor. She was asked this
question, "Were you there when that negro baby was born
up there?" There was objection, which was sustained.
The defendant's attorneys stated that the Solicitor was
attempting to inject other issues in the case, and requested
the Court to admonish him not to do so. When the Judge
sustained the objection, he said, "Let's all proceed orderly."
Counsel for defendant commented still further on the matter,
and asked that the jury be instructed to disregard the ques-
tion which had been asked. The Judge replied: "Yes
sir; objection sustained. I have already ruled." It is con-
tended here that the presiding Judge did not sufficiently
admonish the jury to disregard the question propound-
ed to the witness. We do not see that it was necessary for
him to have stated more than was contained in his state-

ment to "proceed orderly." The language used by the Judge was clear enough that he thought the question was entirely out of order.

(g) A witness for the defendant was interrogated by the Solicitor, on his cross-examination, concerning a trip he made with the defendant and her husband to see a gentleman of some influence with regard to securing a settlement and dismissal of the case against the defendant; and the Solicitor, when the witness denied that he had attempted to secure a dismissal of the case, was notified by the Solicitor that he expected to contradict him by the gentleman, whose name had been mentioned. This gentleman was not called to the witness stand. This incident is alleged as error in exception No. 13. We are unable to see how this prejudiced the defendant in any way. The fact that there was no contradiction of the witness, after the Solicitor had notified him that he would be contradicted, should have tended to strengthen the testimony of the witness before the jury.

(h) Exception No. 14 is due to the fact that the Solicitor asked the defendant if she had not been trying to get the case stopped. When objection was made, the Solicitor withdrew the question. His withdrawal cured any possible error which may have taken place. We really think, however, that it was competent for the Solicitor to inquire of the defendant if she had made any improper efforts to secure a dismissal of the case against her. In order that she may have been examined along this line, it would have been proper for her to be asked the preliminary question as to seeking to get the case stopped.

(i) On her cross-examination, the defendant stated that after the warrant had been issued for her, she went to Columbia in her own automobile and was admitted to bail by a magistrate. The Solicitor asked her this question, "And you never have seen the jailhouse

door yet?" She answered in the negative. Her counsel objected to the line of cross-examination. The Solicitor explained that he was asking questions along the line indicated, because counsel for the defendant had brought out testimony to show that Roddy had not been locked up. Evidently the purpose of the Solicitor was to show that the defendant had not been unjustly or unkindly treated in the case. We do not think there was any harm in this examination. If there was any error, however, it was sufficiently corrected when the circuit Judge ruled that it was incompetent, and announced that the jury should not consider it. The fifteenth exception, in which the matter mentioned is involved, is without merit.

As to Solicitor's conduct:

The appellant urges, in exceptions 10, 16, 17, and 21, that, in several instances, the defendant was prejudiced by the manner of the Solicitor in the examination of witnesses and his argument to the jury. Some of these matters have been incidentally referred to heretofore. One contention, expressed in exception 10, is that the defendant was damaged by an insinuation of the Solicitor that defendant's lawyers had intimated that Sheriff Heise forced the "woman" to sign the warrant. We think this claim has been already sufficiently disposed of.

Exceptions 16, 17, and 21 may be disposed of together. Witness Roddy had testified that for the services performed by the defendant, he had paid her $50 on August 24, 1925. While the defendant did not specifically deny this statement of Roddy, she testified that she only saw him upon two occasions, about June 1, and about December 1, 1925, and that she had not seen him in August or September. In his address to the jury, the Solicitor commented upon the failure of the defendant to deny the payment of the money, claimed by Roddy to have been made by him. Defendant's counsel objected to

the statement of the Solicitor, and took the position that, since the defendant had denied seeing Roddy in August, when the money was claimed to have been paid, that statement was a full denial on the part of the defendant that that she had received the money. The trial Judge stated that he did not remember what the defendant had said, but that the jury would remember the evidence. The Solicitor continued his argument along the same line, and defendant's counsel made another objection, whereupon the Solicitor remarked "go to the record, if you want to have it read, and, if she denied that he paid her $50, turn her loose." The Court inquired if there was a demand that the record be read, and defendant's counsel stated that he did demand it. The Judge then directed the stenographer to look up the disputed matter. Defendant's counsel then made this statement, "To save time I will ask the Solicitor, if he admits that she did not see Roddy until he came there in December." The Solicitor replied that he would not admit anything, and contended that he had the right to argue the case in the manner in which he was doing, and that the jury was the judge of the testimony. The Court stated that he could not tell the Solicitor how to argue the case. Counsel for defendant again noted objection, but there was no further demand that the record be looked up by the stenographer. We think, under all the circumstances, that there was no error as claimed by the defendant. In the first place, the Court may have understood, from statement of the defendant's counsel, that he did not insist upon his request that the stenographer look up the testimony of the defendant on the point involved. Again, since there had been no positive denial by the defendant that she had received the money, we think the Solicitor had the right to take before the jury in argument the position which he urged on that matter.

As to the charge:

Exceptions 18, 19, 22, and 24 relate to the charge of the circuit Judge as to "reasonable doubt." In one place in his charge the Judge used these words: "If you have a doubt arising from the evidence—a sensible, reasonable, doubt—something which you can put your finger on it and say, 'For this evidence, I have a reasonable doubt.'"

The exceptions complain that the words of the Judge, set forth an erroneous proposition of law, in that a reasonable doubt might not only arise from the evidence, but also from the lack of evidence, or from the whole case. It is also contended that the jury was not sufficiently instructed that, if they had a doubt as to the guilt or innocence of the defendant, on the hearing of the whole case, they should resolve it in favor of the defendant, and that the charge as to reasonable doubt did not include this very essential feature.

The charge of Judge Henry was very brief, but we think it covered all the questions in the case sufficiently, and a great part of it touched the matter of reasonable doubt. In addition to the words already quoted from the charge, he used this language:

"Every defendant that comes into Court charged with a crime is presumed to be innocent until their guilt is established to your satisfaction beyond a reasonable doubt, and that presumption remains with them until the evidence overcomes it and establishes it to your satisfaction beyond any reasonable doubt; and a reasonable doubt is just what it says."

Again he told the jury:

"If you have a reasonable doubt about it, and the State has not proven it to your satisfaction, beyond a reasonable doubt—if you have a reasonable doubt about it, then write a verdict of 'not guilty.'"

Right at the conclusion of his charge, he told the jury again:

"If you are not satisfied, beyond a reasonable doubt, it is your duty to solve that doubt in favor of the defendant and acquit her."

Taking the charge as a whole, we think the circuit Judge did all that was necessary to impress upon the jury that the defendant was entitled to any reasonable doubt. There was no request for any further charge, and we see no reason now for any complaint as to the instructions given by the circuit Judge.

As to refusal of a new trial:

There were eight grounds urged for a new trial before the circuit Judge. Seven of these related to matters passed upon by him in the introduction of testimony, or in the argument before the jury, or expressions in his charge. These have already been disposed of in what we have said heretofore. We think it necessary to consider only the eighth ground presented in the lower Court, which is referred to in the twenty-sixth exception before this Court. That ground was that there was no evidence of any corroboration of the first offense proven by the State, in that it was proved that such violation of the statute as took place was not in the presence of any one, except the defendant and the complaining witness, and that corroboration was necessary. We do not think it necessary to review the sickening details brought out in the testimony. The evidence of the "woman," upon whom it was claimed the abortion was performed, was corroborated, in many instances and circumstances, by Roddy. It is not necessary, under the law, before conviction can be secured in cases of this kind, that some third party shall see the crime committed. If this were the law, conviction would be a matter of almost utter impossibility. The corroboration may come from words or acts of the defendants, or from

circumstances. We think there was sufficient corroboration in this case of the complainant's testimony, and the circuit Judge was right in so holding.

It is the judgment of this Court that all the exceptions be overruled, and that the judgment of the lower Court be, and the same is hereby affirmed.

MESSRS. JUSTICES WATTS, COTHRAN, and STABLER, and MR. ACTING ASSOCIATE JUSTICE RAMAGE concur.

MR. CHIEF JUSTICE GARY did not participate.