PEOPLE *v.* LONSDALE.

1. MANSLAUGHTER—ABORTION—DYING DECLARATIONS.

   Where a physician, who visited deceased 11 hours before her death, found her suffering from the effects of an abortion, and informed her that she was a very sick girl, and that he could promise her nothing in the way of recovery, but would do all that could be done under the circumstances, and deceased, appearing to realize her condition, told the physician, in answer to a question as to the cause of her sickness, that respondent produced the abortion by means of an instrument, the statement implicating respondent was properly admitted, on a prosecution for manslaughter, as a dying declaration. LONG, J., dissenting.

2. SAME—INTENT—DISTINCT OFFENSE—IRRELEVANT TESTIMONY.

   Upon a prosecution for manslaughter, where the evidence is conclusive that a criminal abortion was procured, the issue is whether or not the respondent procured the abortion, the guilty knowledge or intent of the person committing the crime being deducible from the crime itself; therefore, testimony as to what respondent did when applied to upon a certain occasion to produce an abortion upon witness, offered for the alleged purpose of showing the intent, is irrelevant, and its admission reversible error.

Error to recorder's court of Detroit; Chapin, J. Submitted October 26, 1899. Decided December 21, 1899.

Alice G. Lonsdale was convicted of manslaughter, and sentenced to imprisonment in the Detroit house of correction for five years. Reversed.

*Orville B. Cragg* (*Philip T. Van Zile*, of counsel), for appellant.

*Allan H. Frazer*, Prosecuting Attorney, and *Henry A. Mandell*, Assistant Prosecuting Attorney, for the people.

GRANT, C. J.   Respondent was convicted of the crime of manslaughter by abortion.   The theory of the prosecution was that on February 21, 1899, the respondent used an instrument for the purpose of procuring the abortion; that the womb was perforated; that deceased aborted on the morning of the 21st; and that she died at 5 o'clock on the 23d.   That an abortion had been committed was conclusively established.

1. The first error alleged is the admission of the dying statement of the deceased that the respondent committed the act.   The objection is that it does not appear that the dying declaration was made under a sense of impending death.   The decisions upon this subject are many.   See *People* v. *Knapp*, 26 Mich. 116; *People* v. *Olmstead*, 30 Mich. 431; *People* v. *Beverly*, 108 Mich. 509; *People* v. *Weaver*, Id. 649; *People* v. *Simpson*, 48 Mich. 477. The mother of the deceased testified that the daughter was ill on the morning of the 22d; that later in the day she had pains and cramps; that she vomited, was feverish, and looked very ill.   Dr. Day was sent for in the evening, but was unable to come until about 6 o'clock on the morning of the 23d.   The doctor testified that on entering the room he formed his opinion very quickly, from the odor, that the girl had blood poison, brought on by an abortion. Her pulse was between 130 and 140; her temperature 103 or 104; her condition very low.

" *Q.* Did you communicate to her her condition?
"*A.* I told her that she was a very sick girl, and that I was surprised to find her in that condition; that under such circumstances I could promise her nothing in the way of recovery, but that I would simply promise to do all that medical skill was able to do under the circum-

stances; and that it would be impossible for me to properly treat her in her own house, and that she would have to be taken to the hospital for proper treatment.

"*Q.* Did she seem to realize that she was liable to die?

"*A.* Yes, sir.

"*Q.* How did she look?

"*A.* She looked like a person dying.

"*Q.* Then?

"*A.* Then; yes, sir.

"*Q.* Did she appear to realize it after you told her this?

"*A.* Yes, sir.

"*Q.* Did you ask her then any questions as to the cause of her sickness?

"*A.* I told her that, considering the grave condition in which I found her, that it was only fair and right that she should tell me how she happened to get in such a condition."

The deceased then told the doctor that the respondent produced the abortion by means of an instrument.

The girl was removed to the hospital about 8 o'clock that morning, and died at 5 in the afternoon.

Greenleaf says:

"It is enough if it satisfactorily appears, in any mode, that they [dying declarations] were made under that sanction [impending death], whether it be directly proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants stated to him, or from his conduct, or other circumstances of the case." 1 Greenl. Ev. § 158.

The admission of dying declarations forms an exception to the law of evidence, and is now confined to cases of homicide. Their admission is based—

"Upon the ground of the public necessity of preserving the lives of the community by bringing manslayers to justice. For it often happens that there is no third person present to be an eye-witness to the fact; and the usual witness in other cases of felony, namely, the party injured, is himself destroyed." 1 Greenl. Ev. § 156.

When there is evidence to show that they were made *in extremis*, they are admissible, and the weight to be given to them in each case is the province of the jury.

In *People* v. *Knapp*, this court, speaking through Justice CAMPBELL, said:

"Their value depends on their intrinsic probability, and the candor and truthfulness of the person making them, as well as upon the fullness and fairness with which they are taken and reported. Where they are taken under suspicious circumstances, or drawn out by doubtful means, they are not excluded, but go to the jury for what they are worth. The whole admission is from necessity,— the witness having passed away,— and the objections are therefore confined to the weight and value of the declarations."

The language of the court, speaking through Justice MARSTON, in *People* v. *Simpson*, at pages 477, 478, 48 Mich., is applicable here. This language is quoted with approval in *People* v. *Weaver*, at page 651, 108 Mich.

The reason for admitting these declarations is especially applicable to cases of abortion, where usually only two parties have knowledge of the crime,— the abortionist and the person upon whom the abortion is produced. While this is no reason for relaxing the rule that they must be made in view of impending death, yet it is a reason why appellate courts should be slow to reverse the holding of the trial judge, who saw the witnesses, and can better judge of their truthfulness and of the surrounding circumstances. We think there was sufficient evidence, within the former rulings of this court, to justify the admission of the declaration.

2. The prosecution introduced the testimony of a witness to show that she had applied to the respondent to have an abortion produced upon her. The testimony was very weak, and was evidently that of an unwilling witness. However, there was sufficient in it to show the purpose of the woman's visit, and that some acts were done towards the accomplishment of that purpose. The attorneys for the people justify this testimony on the ground that it tended to prove guilty knowledge or intent, and rely upon *People* v. *Seaman*, 107 Mich. 348 (61 Am. St. Rep. 326). This case is not within the rule there announced, or

within the authorities there cited. This case does not form an exception to the general rule of evidence. Where the intent or guilty knowledge is a necessary conclusion from the act done, proof of other offenses of a similar character is inadmissible, and violates the rule that the evidence must be confined to the issue. Upon the record, there is no room for an inference that death resulted from accident, or that the operation was performed to save the life or health of the deceased. On the contrary, if the jury found that the dying declaration of the deceased was true, the crime was complete, and the jury could not find otherwise than that it was done with guilty knowledge and intent. This testimony should have been excluded, and for this reason the conviction must be set aside.

3. Error is assigned upon a remark of the prosecuting attorney during the taking of testimony. The remark was highly improper, but no more so than the remark made by the attorney for the respondent which provoked it. Whether the remark was sufficiently prejudicial to justify a reversal, we need not determine, as the case is reversed upon another ground. We are constrained to say again that such conduct in the trial of causes, especially criminal ones, is discreditable to attorneys; and the courts should, without waiting for objections, promptly suppress the language and reprimand the attorneys.

Reversed, and new trial ordered.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred with GRANT, C. J.

LONG, J. I concur in reversing the judgment on the ground stated by my Brother GRANT, but I am of the opinion that the testimony given on the trial did not establish the fact that the so-called dying declaration was made under such circumstances that it became competent evidence. It seems to me that there is no testimony showing that the declaration was made under the fear of death.