PEOPLE v. HODGE,

1. WITNESSES—EXAMINATION—LEADING QUESTIONS.
    Questions intended to call attention to certain subjects about
    which proper testimony is desired, and which do not in
    themselves suggest the answers expected, are not objection-
    able as leading.

2. ABORTION — MANSLAUGHTER — EVIDENCE — OTHER OFFENSES —
    ADMISSIBILITY.
    Where defendant, on trial for manslaughter in procuring an
    abortion, admitted the abortion, but claimed that he believed
    that the operation was necessary, and that he performed it
    without criminal intent, evidence that he had performed a
    similar operation on another woman for the purpose of pro-
    ducing an abortion was admissible on the issue of intent.[1]

3. SAME—RES GESTÆ.
    The testimony of the woman that defendant, on the occasion
    of performing the criminal operation on her, requested her
    to procure as much money as possible from the one respon-
    sible for her pregnancy, but stated that he would make the
    expense lighter if she would permit him to have sexual inter-
    course with her, was admissible.

Error to recorder's court of Detroit; Murphy, J.   Sub-
mitted June 22, 1905.   (Docket No. 174.)   Decided Sep-
tember 19, 1905.

Scott F. Hodge was convicted of manslaughter and sen-
tenced to imprisonment in the Michigan Reformatory at
Ionia for not less than six and not more than nine years.
Affirmed.

*Allan P. Cox* (*Abbott & Abbott*, of counsel), for ap-
pellant.

*Ormond F. Hunt*, Prosecuting Attorney, and *Louis
C. Wurzer*, Assistant Prosecuting Attorney, for the peo-
ple.

---

[1]For homicide in commission of, or attempt to commit, abortion,
see note to *State* v. *Power* (Wash.), 63 L. R. A. 902.

HOOKER, J. The respondent, charged with the offense of manslaughter in an attempt to produce an abortion, was convicted, and has appealed. The alleged errors are grouped, and raised three legal questions:

1. Whether certain questions asked witnesses for the prosecution were leading, and so prejudicial as to call for a reversal of the case.

2. Whether it was error to permit a witness to testify that the defendant had made indecent proposals to her while he was giving her medical treatment.

3. Whether it was error to permit the prosecution to show that respondent had on one occasion, before the act for which he was on trial, performed an operation to produce an abortion upon the last-named witness.

Attention is called to eight questions said to be leading. Among these questions were the following: Elmer Kuhl, a witness responsible for deceased's condition, had testified to a professional interview with a Dr. Kimball about the condition of the girl, and was asked: "What did she say? Did she say anything about marrying?" The answer was: "Yes. She said it would be a dangerous thing to tackle, to do anything like that, and she advised us to get married." Much more was said in the same connection, without other suggestion than that contained in the foregoing question. Again, the witness, having testified at some length concerning the first interview with the defendant, and that he said that there was no danger, was asked: "What did he say in reference to the tools, if anything? His answer was that defendant said, "I have all the necessary tools to do this with," and that he took witness into the operating room and showed him, and said, "If one did not have the necessary tools, he could not go ahead and do this." Again, the witness was asked whether the defendant spoke to him on another occasion with reference to a written statement. The answer was, "Yes. He said he had to have a statement of some kind to bring a sick person to a hospital. He said he was going to take her to Grace Hospital. I signed the statement, and so did the girl." Again, he was asked whether he paid defend-

ant any money. In answer he gave a somewhat lengthy conversation upon this subject, all relevant. Counsel admit that the allowance of such questions is usually within the discretion of the trial judge, but say that these were so plainly improper and injurious as to call for reversal. To us they seem proper, and not leading. They were intended to call attention to certain subjects about which testimony was desired. It was proper testimony, and the questions did not in themselves suggest the answers expected.

The other two questions can best be discussed together. It was the claim of the defendant that the operation, which he did not deny, was a necessary one, or, if not, that he believed it to be, and that he performed it without criminal intent. To show a criminal intent one May Lane was called by the prosecution, who testified that defendant performed a similar operation upon her for the avowed purpose of producing an abortion. It is said by counsel that this testimony was inadmissible, under the case of *People* v. *Lonsdale*, 122 Mich. 392. The cases differ widely. In that case the criminal intent was a necessary conclusion from the act proved. Here it was not, as we have already seen. It depended on the truth or falsity of defendant's defense that the act was done for a legitimate purpose. See *People* v. *Seaman*, 107 Mich. 348.

It remains to consider the second question. May Lane testified in detail to what occurred between her and defendant on the several occasions that he treated her. Upon the subject of payment, which was a proper subject of inquiry, she said that defendant wanted her to give him what money she could.

" *Q.* What did he say, if anything, about bringing a young man in ?

" *A.* He said, if I would do what he wished me to do, to stay with him, he would make the expense lighter. Get what money I could from the fellow, and give him part of it, and I would have more for myself. He threw himself upon me."

The court admitted this testimony as part of the res gestæ. It is undeniable that this testimony was well calculated to prejudice the jury, and that the question was whether he had committed a criminal abortion upon May Lane, not whether he sought or had sexual intercourse with her. But it is undeniable that this conversation, if it occurred, characterized the act, which the defendant afterwards (in making his defense) claimed was treatment for a venereal disease, with which the proposal was inconsistent. It may be said that when the testimony was admitted he had not testified regarding such disease, and that it would not have been necessary, but for such testimony. May Lane testified to an operation for abortion. It was materially strengthened by showing that it was to be paid for, and the price charged and the proposition to have her get him money from the man in the case were explanatory facts and clearly proper; the other proposition and the attendant circumstances being closely connected with the transaction and in fact part of it.

The conviction is affirmed.

McALVAY, MONTGOMERY, and OSTRANDER, JJ., concurred. BLAIR, J., concurred in the result.