16056

STATE v. SCATES
(46 S. E. (2d) 693)

*Messrs. H. R. Swink* and *Sam N. Burts,* of Spartanburg, for Appellant,

*Mr. Samuel R. Watt,* Solicitor, of Spartanburg, for Respondent.

March 8, 1948.

FISHBURNE, J.: James Scates was convicted of the crime of armed robbery and sentenced to the penitentiary for a term of 25 years. He prosecutes this appeal on the ground that the sentence of the court was unreasonable and constituted an abuse of discretion.

Appellant, a lifelong resident of the county of Cherokee, is an unmarried white man of the age of 21 years. In the late afternoon of October, 1946 or 1947 (the record does not disclose which year), he entered the Limestone Mills Store and stated that he wished to buy some cigarettes and cigars. He was waited on by the clerk, Mr. Pierce, while the manager, Mr. O. R. Wells, was in his office in the rear of the building. It was after closing time when this sale was com-

pleted, and appellant left the store. Soon thereafter Mr. Pierce left for his home a short distance away, leaving Mr. Wells alone in the office. Shortly after Pierce left, Scates returned with a confederate, Jerry Mahaffey. He told Wells that he wished to borrow $2. When this statement was made, Mahaffey held an automatic pistol in his hand pointed at Wells, and told him to "take it easy * * * If you will obey all orders and not try any funny stuff, it will be easier." Wells remained seated at his desk, and offered no resistance. Scates then opened the vault in the office and demanded to know where the money was. He had a bag in his hand which he filled with money taken from the vault, amounting to $5,263.00. While robbing the vault he told Wells that if the latter had not refused him a loan of $50 two weeks before, the robbery would not have occurred. After rifling the vault, Scates demanded the keys to Wells' automobile which was parked in front of the store; Wells took the keys from his pocket and handed them to appellant. While all of this was going on, Mahaffey still held the gun on Wells. Scates and Mahaffey then ordered Wells to enter the vault, telling him that they would report where he was some time during the night so that someone could come and get him out. Wells was forced to go into the vault and then both doors—the inner and the outer—were closed and bolted. In testifying, Wells said: "I thought I was left there to smother to death."

Two or three men on the outside of the store saw Scates and Mahaffey come out of the store and drive away in Wells' car, and saw Scates carrying a bag when he entered the car with Mahaffey; Scates was driving. Evidently the suspicions of these men were aroused, because they went to the home of Pierce, and in consequence of what they told him he returned to the store and entered the office of Mr. Wells. Not finding him there, Pierce called him, and heard a noise on the inside of the vault; whereupon he unbolted the doors and released him. Both Wells and Pierce testified that Scates and Mahaffey appeared to be sober, and not under the influence of whiskey.

The following morning, the appellant, Scates, was discovered behind a farmer's barn some miles away, and later the car was recovered. So far as the record shows, Mahaffey has never been apprehended. Nor does it appear that any of the money was recovered.

The appellant took the stand and gave his version of the affair, which does not differ from that given by Wells and Pierce except that he laid the entire blame upon Mahaffey. He said that Mahaffey was the leading actor in the whole matter. His testimony along this line was weak and inconclusive, and wholly unconvincing. He stated that the pistol was his, but that he had handed it to Mahaffey before they entered the store; and that throughout the robbery he was acting under the direction of Mahaffey. He tried to give the impression that he was under Mahaffey's domination.

Appellant admitted that he took the money from the vault and got the automobile keys from Wells, but claims that Mahaffey actually closed the double doors after Wells entered the vault. They fled from the scene in Wells car with Scates driving. After going some miles they stopped at Mahaffey's house, but seeing another car approaching and fearing pursuit they abandoned the car and continued their flight on foot. According to Scates, Mahaffey ran away with all of the money. He said that the robbery was planned after they had taken several drinks of liquor, and that it would not have happened if he had not been drunk. During the whole affair no blows were struck, and there was no physical violence. Wells acted through fear and intimidation, and offered no resistance, while Mahaffey held the gun on him.

Armed robbery, from the earliest time, has always been regarded as a crime of the gravest character. At common law, the penalty for robbery was death. The statutes of the different states vary greatly as to the punishment prescribed for this crime. Our statute, Section 1140, subsection 1, provides that any person convicted of the crime of robbery while

armed with a deadly weapon, shall suffer punishment by imprisonment at hard labor for a term of not exceeding 25 years, in the discretion of the presiding judge.

The only question raised here is whether the trial court, under the facts and circumstances shown in this record has clearly abused its discretion in sentencing the appellant to confinement for the maximum limit of 25 years.

No attack is made upon our statute as being unconstitutional with reference to prescribing cruel or unusual punishment. We have held in the very recent case of *State v. Kimbrough,* S. C., 1948, 46 S. E. (2d) 273, that if the statute fixing the punishment for an offense is not unconstitutional, a sentence within the limits fixed by the statute will not be regarded as cruel or unusual. And it was further held, in line with earlier decisions, that this court has no jurisdiction on appeal to correct a sentence alleged to be excessive when it is within the limits prescribed by law in the discretion of the trial judge, and is not the result of partiality, prejudice, oppression or corrupt motive. To the same effect see *State v. Bowman,* 137 S. C. 364, 135 S. E. 360; *State v. Johnson,* 159 S. C. 165, 156 S. E. 353; *State v. Crosby,* 160 S. C. 301, 158 S. E. 685; *State v. Bolin,* 209 S. C. 108, 39 S. E. (2d) 197.

Can we say, from an examination of the record, that the sentence imposing the maximum limit of the law was affected by prejudice, which is the only ground charged?

Before sentencing the defendant, the trial judge inquired as to his previous record. It was disclosed that in July, 1941, he pleaded guilty to housebreaking and larceny; in November, 1943, he pleaded guilty to a charge of violating the liquor law; that, again in 1944 and 1945, upon separate charges, he pleaded guilty to a violation of the liquor law.

It is true that the trial judge told the prisoner that his version of the robbery was nothing more than a "cock and

bull" story, which the jury could not have believed unless they were dumb simpletons. He likewise said: "The object of punishment is to deter others from crime; to give a lesson to others, but before a man of your kind can learn the lesson or others be deterred, it is necessary to put the fear of the law in them. One group will obey the law for the love of the law. There is another group who will not obey the law except through fear of the law. You belong to that latter class. You are a husky young man with every opportunity in life every American has. You have had every opportunity, but you would rather not make an honest living  *   *   *   You intended to kill that man if he had not given up  *   *   * You went there to take life if necessary."

It must be remembered that the demeanor and conduct of the prisoner, and the atmosphere of the trial, are not truly reflected in a cold, written record. About the only mitigating circumstance suggested here is the comparative youth of the prisoner. And yet the record shows that commencing in 1941, when he was 16 or 17 years of age, he pleaded guilty to the crime of housebreaking and larceny; and that he pleaded guilty three times thereafter to violation of the liquor law. While no physical violence was actually inflicted on Mr. Wells, manager of the Limestone Mills store, it may be presumed that if he had offered resistance he might have been killed, or otherwise severely injured. As it was, he was placed in a vault where he might have suffocated if he had not been promptly rescued. Although the appellant, Scates, and his accomplice, Mahaffey, told him when they placed him in the vault that they would report his confinement to some one during the night so that he could be gotten out, the record does not show that they made any such report.

On the record, we cannot say that the court has clearly abused its discretion. An exhaustive definition of the phrase "abuse of discretion" would be difficult, if not impossible. Each case must be determined with reference to its own peculiar facts. The exercise of a sound judicial

discretion must and should be performed in every case with a conscientious regard for what is just and proper under the circumstances. It does not appear here that the trial court's discretion was exercised arbitrarily, or for reasons clearly untenable or unreasonable.

Judgment affirmed.

BAKER, C.J., and STUKES, TAYLOR and OXNER, JJ., concur.