16339

STATE v. STEADMAN
(59 S. E. (2d) 168)

582

*Messrs. C. T. Graydon* and *Augustus T. Graydon,* of Co-
umbia, *for Appellant,*

584

*Mr. T. P. Taylor, Solicitor,* of Columbia, *for Respondent,*

April 12, 1950.

FISHBURNE, Justice.

The defendant, Ida E. Steadman, was indicted in the Court of General Sessions for Richland County in December, 1947, charged with the violation of Sections 1112 and 1113 of the 1942 Code. Section 1112, upon which the first count is based, provides as follows: "Any person who shall

administer to any woman with child, or prescribe for any such woman, or suggest to or advise or procure her to take, any medicine, substance, drug or thing whatever, or who shall use or employ, or advise the use or employment of, any instrument or other means of force whatever, with intent thereby to cause or procure the miscarriage or abortion or premature labor of any such woman, unless the same shall have been necessary to preserve her life, or the life of such child, shall, in case the death of such child or of such woman results in whole or in part therefrom, be deemed guilty of a felony, and, upon conviction thereof, shall be punished by imprisonment in the penitentiary for a term not more than twenty years nor less than five years. But no conviction shall be had under the provisions of this section upon the uncorrobated evidence of such woman."

Section 1113, upon which the second count of the indictment is based, reads as follows: "Any person who shall administer to any woman with child or prescribe or procure or provide for any such woman, or advise or procure any such woman to take any medicine, drug, substance or thing whatever, or shall use or employ or advise the use or employment of, any instrument or other means of force whatever, with intent thereby to cause or produce the miscarriage or abortion or premature labor of any such woman, shall, upon conviction thereof, be punished by imprisonment in the penitentiary for a term not more than five years, or by fine not more than five thousand dollars, or by such fine and imprisonment both, at the discretion of the court, but no conviction shall be had under the provisions of this section upon the uncorroborated evidence of such a woman."

The defendant was tried under both counts of the indictment and found guilty on the first count—that is, for producing an abortion upon the body of Irene Jones on September 16, 1947, and causing the death of the child with which she was found pregnant. The punishment was assessed by the Court at seven years in the penitentiary. Upon appeal being taken to this court, a decision was rendered Novem-

ber 22, 1948, reversing the judgment of the lower court and remanding the case for a new trial on the second count— charging a violation of Section 1113. The appeal was sustained on the ground that the trial court should have directed a verdict of not guilty on the first count, Section 1112, on which the defendant was convicted, because there was no evidence of a separate and independent existence of a child. In other words, the woman was not quick with child. This decision, *State v. Steadman, is reported in* 214 S. C. 1, 51 S. E. (2d) 91.

The case was not called for trial a second time in the Richland County Court at the January and April Terms, 1949, but was heard at the May Term of that year, and resulted in a conviction on the second count of the indictment. A sentence of five years in the penitentiary was imposed, with a fine of $1,000.00. From this judgment and sentence, the defendant appealed upon various grounds which will now be considered. The numerous and important questions raised will in some measure account for the length of this opinion.

Appellant assigns error to the trial court because of its refusal to grant her motion for a continuance made on the ground that her physical condition was such that she could not safely go to trial. The motion was supported by a certificate of her physician to the effect that she was suffering from arthritis, with slight fever, and was in a highly nervous condition. He expressed the opinion that she was not able to go to trial.

Four doctors appointed by the Court made a physical examination of the accused, and under oath testified that she suffered from an old chronic arthritis in both knee joints, but they noted no swelling of any acute process. They expressed the definite opinion that it would not endanger her life or injure her health to stand trial. They also stated that she was capable of consulting with her attorney and advising with him during the trial; that she could reach the court house without much assistance, and during the trial could

be made comfortable in a rolling type chair, or even in an ordinary chair with a cushion in it.

It is a well established rule in this jurisdiction that the trial court's ruling in granting or refusing to grant a motion for a continuance in a criminal case will not be disturbed in the absence of a clear and conclusive showing of abuse of discretion, with resulting prejudice to the appellant. *State v. Cook,* 204 S. C. 295, 28 S. E. (2d) 842; *State v. McDonald,* 184 S. C. 290, 192 S. E. 365; *State v. Francis,* 152 S. C. 17, 149 S. E. 348, 70 A. L. R. 1133; *State v. Lee,* 58 S. C. 335, 36 S. E. 706.

The record shows that appellant was present throughout her trial, and apparently without ill effect. And we are satisfied that no prejudice resulted to her by reason of the adverse ruling of the court. The exception raising this question is overruled.

It is charged that the trial court erred in presenting the juror W. S. Wooten after he had been examined on his *voir dire,* on the ground that his examination showed that he had formed and expressed an opinion, and was not a fair and impartial juror.

When examined on his *voir dire,* the juror Wooten said that he had heard the *Steadman case* discussed, had read newspaper accounts concerning it, and had formed or expressed an opinion with reference to the guilt or innocence of the accused. He unqualifiedly stated, however, that he could render an impartial verdict based solely on the evidence and the law without being influenced by what he had read or heard discussed.

We think there was no abuse of discretion in the ruling of the court that the juror should be presented. He reiterated under oath, on examination of the court and by counsel for defense, that in reaching a verdict he would be free from bias, prejudice, or fixed opinion, and would be guided by the law and the evidence. *State v. Middleton,* 207 S. C. 478, 36 S. E. (2d) 742; *State v. McDonald,* 184 S. C. 290, 192

S. E. 365; *State v. Mittle,* 120 S. C. 526, 113 S. E. 335; *State v. Milam,* 65 S. C. 321, 43 S. E. 677.

The rationale of the doctrine upon which the foregoing cases are based, is well expressed in 50 C. J. S., Juries, § 232-a, page 980: "Formerly when jurors who had not heard of a case or formed any opinion regarding it were easier to procure the rule was more strict. Now, however, it is generally held that the right to a trial before a fair and impartial jury does not mean that one is entitled to be tried by jurors who have never heard or read of the case or formed a passing opinion thereon. In these times, if that were the rule, it would make it extremely difficult to procure an intelligent jury in cases of any prominence, and it might be that no man of ordinary intelligence would be qualified to sit as a juror. It would tend to place the administration of justice in the hands of the most ignorant and least discriminating portion of the community."

We are asked to discharge the defendant on the ground that she has been once in jeopardy, and cannot, therefore, be tried again. This question is a serious one and we have considered it with care. The defendant contends that the trial court placed the accused in double jeopardy by refusing to quash the indictment. It will be recalled that the indictment contains two counts, charging distinct and separate offenses. The first count as already stated, is based upon Section 1112, which provides punishment for producing a miscarriage, resulting in the death of a child. On appeal, *State v. Steadman,* 214 S. C. 1, 51 S. E. (2d) 91, the judgment and sentence was set aside because there was not sufficient evidence to support the conviction; and the case was remanded for a new trial on the second count of the indictment. This second count charged that the defendant by the use of an instrument produced an abortion on the body of Irene Jones.

In the former trial, the jury found the defendant guilty on the first count, but was silent as to the second count.

That no person shall be twice put in jeopardy for the same offense is a common law principle which we believe is incorporated in the Constitution of each of the states which compose the United States. In these words it is incorporated in our Constitution: Art. 1, Sec. 17: "* * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or liberty * * *." This provision, however, has not been uniformly interpreted and applied in all jurisdictions. *State v. Gillis,* 73 S. C. 318, 53 S. E. 487, 5 L. R. A., N. S., 571, 114 Am. St. Rep. 95, 6 Ann. Cas. 993. The common law rule and the Constitutional provisions declaratory thereof against the second jeopardy, apply in this jurisdiction only to a second prosecution for the same act and crime, both in law and fact for which the first prosecution was instituted. When a single act combines the requisite ingredients of two distinct offenses, the defendant may be severally indicted and punished for each. *State v. Switzer,* 65 S. C. 187, 43 S. E. 513; *State v. Taylor,* 2 Bailey 49; *State v. Thurston,* 2 McMul. 382. The test generally applied is whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first indictment. *State v. Dewees,* 76 S. C. 72, 56 S. E. 674, 11 Ann. Cas. 991; *State v. Switzer,* 65 S. C. 187, 43 S. E. 513; *State v. Glasgow,* Dud. 40; 15 Am. Jur., Sec. 389, Page 3.

It is clear in the present case, that the two counts of the indictment charged two distinct offenses created by two separate statutes. And so far as the record shows, the defendant does not argue to the contrary. It is contended that both counts of the indictment were submitted to the jury, and that conviction on the first count implied an acquittal on the second count.

In our opinion, this contention cannot be sustained under our cases, although the rule is different in some other jurisdictions. A defendant charged with two or more offenses under two or more counts, who by appeal

seeks a review of his conviction under one of the counts and obtains a reversal of the conviction, cannot plead former jeopardy upon a new trial granted on the count or counts as to which there was in the former trial an implied acquittal. Our cases fairly hold that a defendant who is convicted on one count and impliedly acquitted on another, and who appeals and obtains a reversal, can be tried again on all the counts; or on the count on which he was acquitted on the first trial, expressly or impliedly. *State v. Steadman,* 214 S. C. 1, 51 S. E. (2d) 91; *State v. Hamilton,* 80 S. C. 435, 61 S. E. 965, 128 Am. St. Rep. 881; *State v. McGee,* 55 S. C. 247, 33 S. E. 353, 74 Am. St. Rep. 741.

As shown by the reasoning in the above cited cases, it is not easy to see how the positive finding on one count which furnishes the sole basis for the negative implication on the second count can be destroyed and set aside by the voluntary action of the accused, and yet leave the implication to stand alone without a basis.

This inference of acquittal on the second count rests upon the *existence* of the verdict of guilty on the first count. Remove the fact upon which the inference is based, and necessarily the inference goes with it.

In the case of *State v. Commissioners of Cross Roads,* 3 Hill 239, the court clearly stated the rule in force in this state; it is there said: "The defendants were found guilty only on one count, and upon appeal, the verdict was set aside, and a new trial ordered. The verdict was set aside in favor of, and at the instance of, the defendants, who were found guilty. There is nothing on the record that could avail them by way of plea in bar to another prosecution. If the verdict of guilty had remained, it would have protected them, perhaps, against another indictment for the same offense. As long as the verdict of guilty remained on the record there was a finding; but what proceeding is there now on it? I consider all the proceedings on the indictment, since the finding by the grand jury, to be set aside; and set aside at the

instance, and for the benefit of the defendants. The case stands as though it never had been tried. The defendants contended that a verdict of guilty on one count, led to the conclusion that they were acquitted on the other; that is, that omitting to find on one count, and finding on another, is an exclusion of guilt to the extend not passed on by the jury. Such inference could not have been fairly drawn from what was apparent on the record; and the inference cannot be drawn when all the proceedings on the record are obliterated."

The Court continued with this clear illustration of the rule: "If the defendants had moved to be discharged on the first count, when the verdict was rendered and had said to the attorney general that they intended to appeal from the verdict on the second count, the court would no doubt have refused to discharge them, either upon the ground that both issues were connected, or that the defendants had never been tried on the first count. Indeed, the jury might have been instructed to find on the first count, before they were legally discharged from the whole case. In such a case the court would not have discharged the jury till they had found upon all that was submitted to them, unless the defendants had consented."

The point at issue, dealing with former jeopardy, is fully discussed in *State v. Gillis*, 73 S. C. 318, 53 S. E. 487, 5 L. R. A., N. S., 571, 114 Am. St. Rep. 95, 6 Ann. Cas. 993, which contains a full citation of cases. Among them is *State v. McGee*, 55 S. C. 247, 33 S. E. 353, 355, 74 Am. St. Rep. 741, where it is stated: "When a verdict is entered, *which is not afterwards set aside at the instance of the defendant* (italics ours), and the jury discharged from the further consideration of the case, its effect is to acquit the defendant of all the counts in the indictment, although the jury may have found him guilty on a less number than the whole of the counts; otherwise he would be subject for the same offense to be put in jeopardy of life or liberty a second time."

But it is to be here observed that the verdict of guilty rendered by the jury on the first count of the indictment in this case was set aside at the instance of the defendant, which had the effect of completely changing the legal situation.

The judgment of this court reversing the verdict of conviction rendered on the first count of the indictment was made upon an appeal by the accused, and therefore must be regarded as made at her demand, whether the appeal prayed for a new trial or that the judgment be reversed and set aside. The new trial was ordered as a legal consequence flowing from the reversal, and it was the duty of the circuit court to proceed as it did in conformity with the direction of this court in its decision in the former case. *State v. Steadman, supra.*

As the judgment stood before the defendant appealed, it constituted a bar to any further prosecution for the offense set forth in the first count of the indictment, or for the offense set forth in the second count. But when she chose to appeal and successfully sought a reversal of the conviction on the first count, she waived the right to avail herself of the implied acquittal on the second count.

The State offered and introduced over objection the testimony of Miss Linda Montgomery which she had given at the first trial of the case. It is contended that the judgment of reversal was tantamount to a declaration that there had been no trial, in consequence of which the trial judge erred in allowing the state to introduce the testimony of Miss Montgomery given at the former trial.

By procuring a reversal of the judgment of conviction, the accused waived her right to object to a second trial on the ground that she had been once put in jeopardy, but this does not mean that the evidence offered in the first trial is as if it had never been rendered. Neither party on a new trial can rely upon the testimony as taken at the former trial, nor is he bound thereby. On the contrary, each party must offer his evidence anew, just as

though there had been no previous trial; and when it is so offered it necessarily becomes subject to any legal objection which may be taken to it. *Petrie v. Columbia & G. R. Co.,* 29 S. C. 303, 7 S. E. 515.

The foregoing rule, however, does not prevent the introduction of testimony taken at the previous trial, where the presence of the witness cannot be obtained after due diligence and a proper predicate is laid for its introduction.

The constitutional right of an accused to be confronted with the witnesses against him is not infringed by admitting in evidence the stenographer's notes of the testimony on a former trial given by a witness whose presence cannot be secured or who has since died.

It has been held by this court in previous cases that the evidence of a witness who has been examined on a former trial, and where the point in issue is the same, and the parties are the same, may be introduced on a second trial: (1) where the witness is dead (2) insane (3) beyond the seas and (4) where the court is satisfied that the witness has been kept away by the contrivance of the opposite party. *State v. Rogers,* 101 S. C. 280, 85 S. E. 636; *McCall v. Alexander,* 84 S. C. 187, 65 S. E. 1021.

None of the foregoing cases, however, presented the exact question which we have here.

The right of a defendant in a criminal case to be confronted by the witness or witnesses against him is guaranteed in the Sixth Amendment to the Constitution of the United States; also by Section 18, Article I of our Constitution of 1895, which reads as follows: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial * * * to be confronted with the witnesses against him * * *."

The privilege of confrontation has at all times had its recognized exceptions, as we have pointed out above. The confrontation of the witnesses at the former trial,

if the defendant had the opportunity to cross examine, is sufficient compliance with the constitutional requirement, and the testimony then given may be used at the second trial, provided a witness is not legally available. In the case at bar, the accused was present at the first trial, was confronted with the witness Linda Montgomery, and her counsel had the opportunity not only to cross examine her, but did cross examine her at length.

The defendant takes the position that a sufficient predicate for the introduction of the prior testimony of Miss Montgomery was not laid. Upon the trial, the Chief Deputy Sheriff for Richland County, called as a witness by the State, testified in detail on both direct examination and cross examination concerning the efforts he had made to locate Miss Montgomery, and reiterated his inability to find her. He testified that he saw and heard Miss Montgomery testify in the first trial. That prior to the second trial, a subpoena for the appearance of Miss Montgomery was issued and served by him, and that she was placed under recognizance for her appearance at court. He stated that later he made inquiry at Miss Montgomery's last place of employment and at her last known address in Columbia, and was informed that she had departed without leaving a forwarding address. He said that he had gotten in contact with her family in Greenville, Texas, but was unable to obtain any information as to her whereabouts. He enlisted the aid of the Chief of Police in Greenville, Texas, who tried to locate Miss Montgomery, but without avail. Deputy Sheriff Brown testified that he learned that she was somewhere in the state of Florida, but that he had not been able to locate her.

While this testimony offered by the State as a predicate for the admission of the evidence given by Miss Montgomery at the former trial does not show that the witness is dead, insane or beyond the seas, it was ample to show that Miss Montgomery had not been kept away by the contrivance

of the State. As hereinabove stated, it seems that no case in this jurisdiction has heretofore presented this exact question, but in our opinion the rule announced in *State v. Rogers,* 101 S. C. 280, 85 S. E. 636, for the admission of such evidence, is not static. It should be extended to apply and authorize the admission of testimony where it appears that the absent witness has been duly summoned, that his ab-. sence from the state or jurisdiction of the court is without the connivance of the party seeking to introduce the testimony of such witness, and that he cannot be found after diligent search and proper inquiry. This has become a settled rule in practically every jurisdiction in the country, and we think it sound and salutary. Numerous cases supporting this conclusion can be found in Annotation, 159 A. L. R., Page 1240. As above indicated, we think the State laid a sufficient predicate for the introduction of the testimony given by the witness Miss Montgomery in the former trial; and that the trial court exercised a sound discretion in admitting it.

While under direct examination by the State, the prosecuting witness stated that she had visited the office of the defendant in July, 1946, which was more than a year prior to the date of the offense for which defendant was being tried. When asked why she had given a fictitious name to the defendant on her second call, she replied over objection: "Because I owed her from the time before, and I was afraid if I told her my name was Irene Jones, she wouldn't do anything for me." She had just previously testified that, upon request of the defendant, she had signed a blank sheet of paper, and that in order to hide her identity she used the assumed name of "Mary Smith." She was told by the accused that sometimes people talked, and if she signed that piece of paper, it would keep the accused out of trouble.

It is argued by counsel for the defendant that the admission of the quoted testimony constituted prejudicial error because the only inference the jury could have drawn was

that the defendant had committed another abortion or miscarriage upon Irene Jones. It is contended that this evidence does not come within any of the exceptions to the general rule, which is, that on trial for one crime, testimony of other distinct and independent crimes is not admissible.

The state argues that the evidence tending to show the commission of an abortion on the same woman over a year prior to the date of the offense upon which the defendant was being tried, is competent to show *quo animo,* intent, design, guilty knowledge, or for the purpose of corroboration.

Under the factual situation of this case, we are of the opinion that the evidence of the prosecutrix tending to show the commission by the accused of a separate and distinct abortion upon her, prior to the date of the offense upon which defendant was being tried, comes within the purview of the exceptions to the general rule.

In the instant case, the defendant pleaded not guilty. No defensive theory was tendered by the defense except that of innocence of the offense charged. The sole issue here is whether or not the defendant performed the act with which she is charged.

It is a rule of general acceptation that upon trial for a particular crime, evidence which tends to show the commission of another and distinct offense by the defendant, is inadmissible. To this rule, there are, however, as pointed out in many of our cases, various exceptions. *State v. Shumpert,* 195 S. C. 387, 11 S. E. (2d) 523; *State v. Gregory,* 191 S. C. 212, 4 S. E. (2d) 1; *State v. Lyle,* 125 S. C. 406, 118 S. E. 803; *State v. Sharpe,* 138 S. C. 58, 135 S. E. 635.

The admission of evidence of similar offenses in cases of this character, not too remote in time, constitutes, in our opinion, an exception to the general rule. There is a conflict in the cases on this subject. According to one line of authorities, with which we are in accord, the State would have the right to introduce evidence of a similar of-

fense as a part of its case in chief in order to negative the possibility that the operation was necessitated by the condition of health of the person upon whom the abortion was performed. This line of cases holds that where the element of intent is an essential ingredient of the crime charged and must be proved by the State, evidence of other abortions or attempted abortions is admissible, because relative to that issue, as part of the State's case in chief. *State v. McCurtain*, 52 Utah 63, 172 P. 481, 482; *Clark v. People*, 224 Ill. 554, 79 N. E. 941; *People v. Hagenow*, 236 Ill. 514, 86 N. E. 370; *People v. Schultz-Knighten*, 277 Ill. 238, 115 N. E. 140; *People v. Hobbs*, 297 Ill. 399, 130 N. E. 779; *State v. Newell*, 134 Minn. 384, 159 N. W. 829; *State v. Rowley*, 197 Iowa 977, 195 N. W. 881; *State v. Brown*, 3 Boyce, Del., 499, 85 A. 797, 800; *State v. Doty*, 167 Minn. 164, 208 N. W. 760, 761.

Other cases hold that evidence of other abortions, or attempted abortions, becomes relevant, competent and material only when the defendant has testified or otherwise indicated, that he admits the act charged, but denies criminal intent by assigning some other excuse or justification for doing the act. *State v. Cragun*, 85 Utah 149, 38 P. (2d) 1071; *People v. Seaman*, 107 Mich. 348, 65 N. W. 203, 61 Am. St. Rep. 326; *People v. Lonsdale*, 122 Mich. 388, 81 N. W. 277; *People v. Hodge*, 141 Mich. 312, 104 N. W. 599, 113 Am. St. Rep. 525; *People v. Hickok*, 56 Cal. App. 13, 204 P. 555; *Clark v. Commonwealth*, 111 Ky. 443, 63 S. W. 740.

In *People v. Hagenow*, 236 Ill. 514, 86 N. E. 370, evidence of other abortions was held admissible. In *People v. Schultz-Knighten*, 277 Ill. 238, 115 N. E. 140, the evidence of other abortions was admitted for the purpose of showing guilty knowledge. In *People v. Hobbs*, 297 Ill. 399, 130 N. E. 779, at page 783, the court says: "* * * The specific intent or purpose to produce a criminal abortion must be proved before the guilt of the accused is established, and proof of performance of former similar criminal abortions

on the same or another woman is admissible, under the authorities, to prove such specific intent. A defendant could not render this testimony incompentent by interposing a particular defense to the charge. *People v. Hagenow, supra.* In its case in chief the state must prove all of the elements of the crime, including the intent, and need not wait to learn the character of the defense that is to be made by the defendant. The plea of not guilty puts in issue all material allegations and any proper defense may be shown thereunder. * * * So it is not the law, as claimed and insisted by the plaintiff in error, that in order for such proof to be admissible it must further appear that the defendant admits the commission of the act but alleges that such act was necessary for the preservation of the life of the patient. Courts of other states hold to the same effect, and such proof is not confined to former convictions for abortion but may be made by parol evidence and where the defendant was never tried for such former offenses."

In *State v. Newell,* 134 Minn. 384, 159 N. W. 829, the court admitted evidence of other abortions by the accused for the purpose of showing a guilty or criminal intent in doing the act charged. In *State v. Rowley,* 197 Iowa 977, 195 N. W. 881, at page 882, the court says:

"Over the objection of appellant the court admitted in evidence testimony tending to show that appellant had committed abortions upon other women than the one named in the indictment. Unquestionably, the general rule is that, upon the trial of a criminal case, evidence of the commission of other similar crimes by the defendant is inadmissible. The rule has been declared so frequently that citation of authorities is unnecessary to support it. There are, however, exceptions to this rule, and particularly so where a question of intent is involved. The statute under which appellant was indicted provides that the act must be done 'with intent' to produce the miscarriage of any woman. It also provides that the act is not criminal in the event such miscarriage shall be

necessary to save the life of the person upon whom the operation is performed.

"In this case the appellant denied that she performed any operation whatever, and it is therefore urged that evidence of other similar crimes for the purpose of showing intent was inadmissible. The state, however, was compelled to establish, as part of its main case, not only the fact of the use of the instruments, but that they were used with the specific intent charged, and that it was not necessary so to do in order to save life. Notwithstanding the appellant's denial of evidence of having in any manner performed the act charged, the burden rested upon the state, not only to prove that the appellant used an instrument as charged, but that it was done with the intent to procure a miscarriage, and that such intent was an unlawful one, because of the fact that the operation was unnecessary to save life. The fact that appellant may have performed other similar acts closely connected in time with the act in question, and that such acts were performed with the intent to produce miscarriage, and that the same was not necessary to save life, would have a legitimate bearing upon the question of the intent of appellant in the instant case, if the jury believed the evidence of the state to the effect that the act was in fact performed."

This court, in our opinion, is committed to the above stated doctrine that in an abortion prosecution, the element of criminal intent is an essential ingredient of the offense charged, and that the burden is cast on the State to prove such element by adequate and substantial evidence in its case in chief.

In *State v. Sharpe,* 138 S. C. 58, 135 S. E. 635, 637, it was held that in a prosecution for abortion evidence of other abortions or attempted abortions by the accused on the same woman when not too far removed in point of time is admissible. The Court said: "The evidence for the prosecution was to the effect that, to accomplish the desired object, the defendant used a certain instrument on August 24th, that she

prescribed medicines on August 28th, again used an instrument on September 1st, and prescribed medicines about December 1st. * * * We think the evidence as to the visits of the 'woman' to the defendant at various times, and as to the happenings at those times, was competent, for at least two reasons: First to establish the intent of the defendant (*Sullivan v. State,* 121 Ga. 183, 48 S. E. 949); and, second, as corroborative circumstances in the case."

The cases already cited support the view that where the act itself is not admitted, the jury should be clearly instructed by the court, when requested, that evidence of other abortions or attempted abortions is limited to the question of intent, and the first thing to be considered in determining whether or not the defendant committed the act charged. *State v. Brown,* 3 Boyce, Del., 499, 85 A. 797. The following is pertinent in *State v. Doty,* 167 Minn. 164, 208 N. W. 760, 761: "There was evidence of two other abortions performed about the same time. Such evidence is competent in this class of cases for the purpose of showing a willingness and readiness, or a guilty or criminal intent. 1 C. J. 329; 1 Wig. Ev. (2d Ed.), §§ 302, 359; *State v. Newell,* 134 Minn. 384, 159 N. W. 829, and cases cited. Such evidence is to be restricted to the limited purpose for which it is received. It is to be distinguished from evidence objectionable as proving merely other crimes. The danger of it is that a jury may convict because, though guilt of the crime charged is not proved, it is satisfied to convict because of other crimes."

In our opinion, the evidence objected to, tending to prove the prior offense, was relevant and admissible for the reasons given; and the court committed no error in permitting its introduction.

Error is assigned because the court refused to allow the attorney for the accused to elicit from the prosecuting witness the name of the father of the unborn child. We are unable to perceive what probative value the

naming of the father of the unborn child could have had on the issue before the court. The defendant could have suffered no prejudice by the exclusion of this testimony. Apparently there is no ruling in this state on this particular question, but in other jurisdictions in which the question has been raised, it has been held, and, in our opinion, soundly so— that the name of the father of the unborn child in the case of an abortion is immaterial, where the paternity of the child is not in question. 1 C. J. S., Abortion, § 24, page 332. We overrule the exception raising this issue.

Error is assigned because the trial court admitted over objection a recording of a telephone conversation had between Miss Betty Hall, a witness for the State, and the defendant. It is charged that this testimony was received in violation of the rule of evidence as to entrapment and illegal search and seizure, and constituted a violation of the Federal Communications Act, 47 U. S. C. A. § 605.

The recording of the telephone conversation between Miss Hall and the defendant was made under the following circumstances: Miss Hall was in the office of the sheriff together with one or more deputy sheriffs, and it was arranged among them that Miss Hall, who had a previous acquaintance with accused, would call her on the telephone for the purpose of obtaining from her incriminating statements tending to show guilt of the offense charged. They installed a listening apparatus directly connected with the telephone that was used by Miss Hall to make this particular call, and the machine was equipped with a device which enabled the operator to hear the voices coming into the machine. The extension cord running from the telephone was connected with what is called an amplifier which amplifies the speech for recording purposes. With this machine, a record was made on a disc of the entire conversation had by Miss Hall with the defendant on the other end of the line.

The appellant cites and relies upon *Weiss v. United States,* 308 U. S. 321, 60 S. Ct. 269, 84 L. Ed. 298, as holding that intrastate communications are governed by the terms of the Federal Communications Act. And of course the telephone communication between Miss Hall and accused was intrastate. It is true, as was held in the above case, that the interdiction of Sec. 605, of the Federal Communications Act of 1934 is not limited to interstate and foreign communications, but also renders incompetent in a Federal Court evidence obtained by the interception of intrastate communications. However, while this case announces a rule as to the Federal Court, we have found no case which applies it to a State Court. Even if the Act applied to State Courts and State officers, the recording as introduced in the case at bar would be competent under the decision of the United States Supreme Court in the later case of *Goldman v. United States of America,* 316 U. S. 129, 62 S. Ct. 993, 995, 86 L. Ed. 1322.

In the *Goldman case,* Mr. Justice Roberts, speaking for the Court, construed at length the interdiction of Section 605 of the Federal Communications Act on wire communications. In that case as in this, a listening apparatus was installed with a connecting wire attached to ear phones to the receiving telephone. The Court stated in the *Goldman case*:

"The petitioners contend that a communication falls within the protection of the statute once a speaker has uttered words with the intent that they constitute a transmission of a telephone conversation. The validity of the contention must be tested by the terms of the Act fairly construed. So considered, there was neither a 'communication' nor an 'interception' within the meaning of the Act. The protection intended and afforded by the statute is of the means of communication and not of the secrecy of the conversation. Section 3 embodies the following definition:

" '(a) "Wire communication" or "communication by wire" means the transmission of writing, signs, signals, pic-

tures, and sounds of all kinds by aid of wire, cable, or other like connection between the points of origin and reception of such transmission, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission.'

"What is protected is the message itself throughout the course of its transmission by the instrumentality or agency of transmission. Words written by a person and intended ultimately to be carried as so written to a telegraph office do not constitute a communication within the terms of the Act until they are handed to an agent of the telegraph company. Words spoken in a room in the presence of another into a telephone receiver do not constitute a communication by wire within the meaning of the section. Letters deposited in the Post Office are protected from examination by federal statute, but it could not rightly be claimed that the office carbon of such letter, or indeed the letter itself before it has left the office of the sender, comes within the protection of the statute. The same view of the scope of the Communications Act follows from the natural meaning of the term 'intercept'. As has rightly been held, this word indicates the taking or seizure by the way or before arrival at the destined place. It does not ordinarily connote the obtaining of what is to be sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the moment, it comes into the possession of the intended receiver. The listening in the next room to the words of Shulman as he talked into the telephone receiver was no more the interception of a wire communication, within the meaning of the Act, than would have been the overhearing of the conversation by one sitting in the same room."

To the same effect see *U. S. v. Yee Ping Jong, D. C.,* 26 F. Supp. 69, 70.

It is quite clear that the admission of this evidence did no violence to Section 605 of the Federal Communications Act,

nor to any rule in South Carolina. Even if such evidence under the state rule should be deemed to have been illegally seized it would be admissible, *State v. Kannellos,* 122 S. C. 351, 115 S. E. 636.

In the case of *State v. Hester,* 137 S. C. 145, 134 S. E. 885, 891, exception was taken that the entrapment by officers rendered certain testimony incompetent. This court held: "The fact that the officers in a way 'entrapped' the defendants, and by artifice enabled themselves to hear their talk, does not make their statements at the time incompetent as testimony."

We think there is no merit in the exception raising this issue.

Error is assigned because the trial judge erred in allowing Miss Betty Hall, a witness for the state, to relate another telephone conversation she had with the defendant, on the ground that Miss Hall did not properly identify the voice as being that of the defendant. In our opinion, no error was committed in the admission of this testimony. Miss Hall testified that she had met accused several times at Peacock Grill, a road house located four or five miles outside of Columbia. That she had talked with her at least eight times, and knew and recognized her voice when she spoke with her over the telephone; and that the voice was that of the defendant.

On cross examination she stated that she did not recognize the voice over the telephone until accused identified herself by giving her name, but when the entire testimony is read and considered, it may readily be inferred that Miss Hall recognized the voice of the defendant before any self identification was made. The credibility of her testimony was for the jury.

It is also contended that the lower court erred in the admission of the phonograph recording of the conversation had by Miss Hall when she talked over the telephone in the sheriff's office with the defendant, who was

at her home. It is urged that the witnesses for the State did not properly identify the voice on the other end of the line as being that of the defendant. What we have already said with reference to Miss Hall's familiarity with the voice of defendant, applies with equal force here. Chief Deputy Sheriff Brown testified that both prior to and after the time of the recording of this telephone conversation, he had talked with the defendant and knew and recognized her voice on the telephone as that of the defendant. In addition to this, the telephone number dialed was listed in the telephone directory as the office of the defendant, and the record shows that the defendant answered telephone, repeating her telephone number, 2-3-0-39.

The rule as to the admissibility of telephone conversations is stated in the case of *Cohen v. Standard Accident Ins. Co.,* 194 S. C. 533, 9 S. E. (2d) 222, 224: "According to the weight of authority, evidence is admissible as to a conversation over the telephone where the witness called for a designated person or firm at his or its place of business, and the person answering the call claims to be the person called for, or to represent him or it, and the conversation carried on is one regarding the business transacted by such person or firm. In such cases if the communication was such that it might properly have been made to one found in the office or place of business called, who assumed to have authority to receive it, and who, so far as the contrary appears, did have such authority, the telephone conversation is admissible without further evidence to identify the particular person with whom it was had. This rule is said to be based upon apparent necessity, in view of the constant use of telephones. *Gilliland & Goffney v. Southern R. Co.,* 85 S. C. 26, 67 S. E. 20, 24, 27 L. R. A., N. S., 1106, 137 Am. St. Rep. 861; 20 Am. Jur., Section 367, Page 335; Annotation, 71 A. L. R. 41, 105 A. L. R. 335."

Of like import is the following excerpt from Dean Wigmore's treatise on evidence, Second Edition, Section 2155:

"It is generally stated that a person may be recognized and identified by the voice if the hearer is acqainted with the speaker's voice   *   *   *."

And to the same effect is *State v. Hester,* 137 S. C. 145, 134 S. E. 885; where the court stated with reference to detectaphone evidence: "The admissions and declarations of accused are not incompetent because they were received over a telephone or detectaphone, whereby witness receiving them can testify that he knew and recognized his voice, or where his testimony as to the identity of the voice is sufficient to carry the question to the jury.'   *   *   *   The record discloses, not only from evidence adduced by the state, but from the testimony of the defendants themselves, that, at the time of these conversations, the defendants were under the impression that they were in a place where they could talk freely, without danger of being overheard.   *   *   *"

We think the evidence as to the identity of the voice of the defendant was amply sufficient for submission to the jury.

It is next urged that there was a lack of competent corroborative testimony as required by the statute. It is contended by the defendant that the state failed in any way to corroborate the testimony of the prosecuting witness as to the commission of the offense.

It was said in the case of *State v. Sharpe,* 138 S. C. 58, 135 S. E. 635, 640: "*   *   *   The evidence of the 'woman,' upon whom it was claimed the abortion was performed, was corroborated, in many instances and circumstances, by Roddy. It is not necessary, under the law, before conviction can be secured in cases of this kind, that some third party shall see the crime committed.   *   *   * The corroboration may come from words or acts of the defendants, or from circumstances."

A review of the record reveals that the above quoted rule was fully complied with. There was ample corroborating evidence to support the testimony of the

prosecuting witness in proof of the commission of the offense charged, and we hold that the trial court committed no error in submitting the case to the jury.

Finally it is urged by appellant that the sentence imposed, —a fine of $1,000.00 and imprisonment in the penitentiary for a period of not more than five years at such labor as she can perform,—is excessive, unreasonable, and oppressive, and constitutes cruel and unusual punishment.

The mitigating circumstances presented are the defendant's age and physical condition. She is a white woman, sixty-six years of age at the time of her trial, and suffering from a chronic arthritic condition.

Before sentencing the defendant, the trial judge discussed with her counsel and with the solicitor her previous criminal record. It was disclosed that in 1926, under the name of Ida E. Sharpe, she was tried and convicted of committing an abortion. For that offense she was sentenced to serve from two and a half to five years in the state penitentiary, and to pay a fine of $2,000.00. Upon appeal from this conviction, the judgment was affirmed. *State v. Sharpe,* 138 S. C. 58, 135 S. E. 635. She served about two years of this sentence before being released.

In consideration of her prior record and the evidence offered in the present case, the trial judge concluded that he would not be warranted in imposing less than the maximum sentence.

It is the established rule in this state that this court has no jurisdiction on appeal to correct a sentence alleged to be excessive, when it is within the limits prescribed by law for the discretion of the trial judge, and is not the result of partiality, prejudice, oppression, or corrupt motive. *State v. Phillips,* 215 S. C. 314, 54 S. E. (2d) 901; *State v. Scates,* 212 S. C. 150, 46 S. E. (2d) 693; *State v. Kimbrough,* 212 S. C. 348, 46 S. E. (2d) 273; *State v. Gregory,* 198 S. C. 98, 16 S. E. (2d) 532.

The issue then is: Was the imposition of the fine and the sentence of five years unreasonable and oppressive under the circumstances stated, and did the action of the court constitute an abuse of discretion? Or did the imposition of the sentence come under the constitutional ban as constituting cruel and unusual punishment?

In our opinion, this record negatives any such conclusion. What the court stated in *State v. Scates*, 212 S. C. 150, 46 S. E. (2d) 693, 695, may aptly be quoted here: "An exhaustive definition of the phrase 'abuse of discretion' would be difficult, if not impossible. Each case must be determined with reference to its own peculiar facts. The exercise of a sound judicial discretion must and should be performed in every case with a conscientious regard for what is just and proper under the circumstances. It does not appear here that the trial court's discretion was exercised arbitrarily, or for reasons clearly untenable or unreasonable."

Judgment affirmed.

STUKES and OXNER, JJ., concur

BAKER, C. J., and TAYLOR, J., dissent.

BAKER, Chief Justice (dissenting).

I will dispense with the usual formality, though sincere, of apologizing for writing a dissenting opinion in this case; and in writing same, will confine it to the issue of former jeopardy which is the only issue, as I view the record, necessary to be decided.

By reference to the report of the opinions in *State v. Steadman*, 214 S. C. 1, 51 S. E. (2d) 91, and the record herein, it will be seen that the appellant was tried for the first time at the January (1948) term of the Court of General Sessions for Richland County on an indictment containing two counts bottomed on Sections 1112 and 1113 of the Code, which sections are set out in full in the main opinion in that case (and in the majority opinion on this appeal), and therefore need not again be set forth.

Prior to pleading to the indictment, the appellant, through counsel, moved to quash it on the ground that it contained two separate and distinct statutory crimes; and failing in this motion, it was further moved that the State be required to elect upon which count (section of the Code) it would proceed.

The trial Judge refused both motions and the appellant was put upon trial on both counts. At the conclusion of the testimony in behalf of the State, the appellant unsuccessfully moved for a direction of verdict of not guilty generally, and again after all testimony was in, the appellant unsuccessfully moved for a direction of verdict of not guilty on the first count of the indictment, under Section 1112 of the Code. The jury found a verdict of "Guilty" on the first count. No mention was made in the verdict of the jury as to the second count in the indictment. Indeed, the trial Judge charged the jury: "I say, it is within your province to return a verdict of 'Guilty on first count,' and that will mean, in view of the way I am submitting the matter to you—that will mean not guilty on the second count, or at least you won't be concerned with it. At any rate, first, 'Guilty on the first count,' or, second, 'Guilty on the second count,' or, third, 'Not Guilty.' Now, does everybody understand that? I think I made it clear. In other words, I might submit the matter to you in a different form, but under the view I take of it, I am just going to submit it to you that way. In other words, it is within your province, depending upon how you view the testimony, and depending upon what weight you attach to it, to return one of three verdicts, either 'Guilty on the first count,' or, 'Guilty on the second count,' or, 'Not Guilty,' which would mean not guilty on either of the counts contained in the indictment."

The jury found a verdict of guilty on the first count, and from such judgment the appeal came to this Court. In the opinion of this Court it was stated: "The exceptions to which we direct our attention, and the only ones necessary for the

Court to consider in this appeal, raise the issue if there was sufficient proof of the *corpus delicti* to allow the Judge to submit the case to the jury under Section 1112 of the Code. Stated in another way, did the trial Judge err when he refused to grant the appellant's motion for a direction of verdict of not guilty as to the first count in the indictment?"

After a discussion of the applicable law, this Court stated that there was a total failure on the part of the State to produce testimony of very necessary elements to sustain a conviction of the appellant under Section 1112 of the Code (the first count in the indictment), and directly and definitely held "that the trial Judge erred in refusing the appellant's motion for a direction of verdict of not guilty under the first count; and that the case should have been submitted to the jury on only the second count."

It will therefore be seen that the appellant was not granted a new trial, and under the exceptions considered, did not seek a new trial, but, as aforesaid, successfully sought to have this Court declare that the trial Judge committed error in refusing to grant her motion for a direction of verdict of not guilty on the first count contained in the indictment—the one on which she was convicted and sentenced. No issue was then before this Court as to the second count in the indictment. The remanding of this case for a new trial on count two of the indictment by a majority of the Court was purely gratuitous, without such issue being before the Court in any form, and without opportunity being given the appellant to be heard thereabout.

Now, for the first time, does the issue of the appellant's pleas of *autrefois acquit* and "former jeopardy" on the second trial, when she was tried, convicted and sentenced solely on the second count, come before this Court.

Notwithstanding the charge of the presiding Judge, let it be conceded, without so deciding, that the plea of *autrefois acquit,* under the facts of this case, is not available to the appellant; yet this does not take from her the plea of "former

jeopardy." There can be no question that she wes put upon trial on both counts in the indictment in her first trial, and a mistrial on this count was not ordered by the trial Judge for cause. The appellant was placed upon trial upon a valid indictment, before a Court of competent jurisdiction, after being arraigned, after pleading not guilty thereto, and when a competent jury had been sworn; and she could not be deprived of the plea of former jeopardy by reason of the charge to the jury by the trial Judge upon that trial.

The leading case in this State dealing with the pleas of *autrefois acquit* and "former jeopardy," is *State v. Bilton*, 156 S. C. 324, 153 S. E. 269, 272, authored by Mr. Justice Blease (afterward Chief Justice), and concurred in by all members of the Court as then constituted. It is therein stated:

"At the outset, let it be noted that there is quite a distinction between *autrefois acquit* and 'former jeopardy.' *Autrefois acquit* is a plea made by a defendant that he has been formerly tried and acquitted of the same offense. 6 C. J. 870.

" 'According to the decisions of this state, and the weight of authority elsewhere, it may be stated, as a general rule, that one is in jeopardy when a legal jury is sworn and impaneled to try him upon a valid indictment, in a competent Court.' *State v. Rountree,* 127 S. C. 261, 121 S. E. 205; *State v. Stephenson,* 54 S. C. 234, 237, 32 S. E. 305, 307.

" 'A defendant in a criminal prosecution is in legal jeopardy when he has been placed upon trial under the following conditions: (1) Upon a valid indictment or information; (2) before a court of competent jurisdiction; (3) after he has been arraigned; (4) after he has pleaded to the indictment or information; and (5) when a competent jury have been impaneled and sworn.' 16 C. J. 237.

"To sustain the plea of *autrefois acquit*, a defendant must establish all the essential elements of legal jeopardy, and, in addition thereto, he is required to show that a verdict of

acquittal was rendered. The effect of the sustaining by the court of a plea of former jeopardy is equivalent in one great respect to the effect of upholding a plea of *autrefois acquit* since the result is to prevent the defendant's trial again for the offense. The main difference in the result of the sustaining of the pleas is this : In that of *autrefois acquit,* the court declares that the innocence of the defendant of the crime charged has been legally established theretofore; while, as to former jeopardy, without a holding as to his innocence, it is declared that the state cannot try him again for the alleged crime."

It is unnecessary to consume time and energy in pointing out wherein the *Bilton case* is absolutely controlling of the issue here. Such will be obvious from a reading of that case.

It is my opinion that the appellant is being denied the right guaranteed, not only to her, but to all other citizens of the State, by that portion of Section 17 of Article 1 of the Constitution of 1895 reading : "Nor shall any person be subject for the same offense to 'be twice put in jeopardy of life or liberty."

Of the lesser of two evils, I would say that to allow one guilty of crime to escape punishment is preferable to the deprivation of such one's guaranteed constitutional right by a mandate of the Court.

For the foregoing reasons, it is my opinion that the judgment should be reversed, and the appellant allowed to go hence without delay.

TAYLOR, J., concurs.