*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 16, 2024

Plaintiff-Appellee,

v

No. 363284
Kalamazoo Circuit Court
LC No. 2020-000134-FC

MATTHEW MARTIN IV,

Defendant-Appellant.

Before: GADOLA, C.J., and K. F. KELLY and MARIANI, JJ.

PER CURIAM.

Defendant, Matthew Martin IV, appeals by right his convictions following a jury trial of armed robbery, MCL 750.529; two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and possession of a firearm by a felon (felon-in-possession), MCL 750.224f. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to prison terms of 35 to 60 years for armed robbery and 20 to 60 years for felon-in-possession. In addition, the trial court sentenced defendant to two years in prison for each felony-firearm conviction, to be served concurrent to each other, but consecutive to the armed robbery and felon-in-possession sentences. We affirm.

## I. FACTS

In January, 2020, Helen Cullen was robbed at gunpoint while she was waiting for a friend to let her into an apartment building. After taking Cullen's purse and cell phone, the assailant walked away toward the dumpsters on the property. Cullen's friends then let her into the apartment building and called 911. Police responded within 30 minutes; two officers left on foot with a canine to search for the assailant. The track began at the dumpsters where the assailant was last seen. The dog locked onto a scent and tracked it to the back of an apartment building, but no further. The canine handler's backup checked the back door, saw that it was open, and noticed wet footprints leading into the building. Other officers converged on the spot and entered the building to secure the building's common areas. Defendant was eventually located in a locker inside a second-floor storage room. Among the items in the locker with him was a credit card belonging to the victim. Officers also found items in a third-floor storage room that included an

-1-

SAR nine-millimeter handgun and a social security card, Bridge card, and driver's license, all belonging to the victim, and a checkbook belonging to defendant's grandmother.

On the first day of trial, the judge placed on the record that she had endorsed two attorneys for three judicial vacancies to be filled at the upcoming election. One of the attorneys was the assistant prosecuting attorney assigned to defendant's case. Defense counsel orally moved for the judge to recuse herself, in part on grounds of her endorsement of the prosecutor, but also because the judge had been on all of defendant's cases. The judge denied the motion explaining that she was comfortable moving forward and did not believe that her endorsement caused her to be biased. The trial judge entered an order denying defendant's motion and referring the matter to the chief judge; the trial court did not stay the trial. At the conclusion of the trial, defense counsel asked the trial court to rescind the referral to the chief judge. After a three-day trial, the jury found defendant guilty as charged. Defendant appeals.

## II. ANALYSIS

### A. PROSECUTORIAL AND JUDICIAL MISCONDUCT

Defendant first asserts that prosecutorial and judicial misconduct deprived him of a fair trial. We disagree.

### 1. DISQUALIFICATION

Defendant first asserts that the trial judge erred by not recusing herself on grounds that she had publicly endorsed the prosecutor for a judicial position in the upcoming election. Defendant asserts that the endorsement created the appearance of bias. This argument is without merit.

A trial court's findings of fact on a motion to disqualify a judge are reviewed for an abuse of discretion and we review de novo the application of the law to the facts. *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). Any party challenging a judge for bias "must overcome a heavy presumption of judicial impartiality." *Id*. Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:

> (a) The judge is biased or prejudiced for or against a party or attorney.
>
> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of propriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. [MCR 2.003(C)(1)]

Canon 2(A) of the Michigan Code of Judicial Conduct provides, in relevant part, as follows:

> Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

Defendant's contention is that the judge's endorsement of the prosecutor for judicial office is "purely a matter of the appearance of bias" that implicates MCR 2.003(C)(1)(b). But an objective view of the facts does not require disqualification under MCR 2.003(C)(1)(b). To preserve the integrity of the proceedings, the judge informed defense counsel that she had endorsed the prosecutor assigned to his case. The judge also assured the attorneys that she believed that the endorsement would not affect her rulings. There is no reason that an endorsement such as this alone would impair the judge's ability to carry out her judicial responsibilities with impartiality. This is simply not the type of extreme case in which the probability of actual bias is too high to be constitutionally tolerable. See, e.g., *Caperton*, 556 US at 886-887 (finding that the failure to recuse was error when a party had made substantial monetary contributions to a judge's election campaign and "the probability of actual bias rises to an unconstitutional level"); *United States v Liggins*, 76 F4th 500, 503 (CA 6, 2023) (requiring disqualification on grounds of a district court judge's comments that the defendant "looks like a criminal to me").[1] In light of the foregoing, and considering the heavy presumption that a judge is impartial, see *Wells*, 238 Mich App at 391, we see no reason for the trial judge to have recused herself under MCR 2.003(C)(1)(b).

## 2. PROSECUTORIAL MISCONDUCT

Defendant next contends that the prosecutor committed prosecutorial misconduct by routinely asking leading questions on direct and redirect examination, and that the trial court's allowance of these questions constituted an abuse of discretion and rose to the level of a violation of his constitutional right to a fair trial. Again, we disagree.

Defendant identifies more than three dozen questions that he deems impermissibly leading. He preserved this issue as to some of the questions by raising objections; the issue is not preserved with regard to those questions to which he did not object in the trial court. We review preserved claims of prosecutorial misconduct de novo to determine whether the identified conduct deprived the defendant of a fair trial, see *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013), and a trial court's decision to allow leading questions for an abuse of discretion, *In re Susser Estate*, 254 Mich App 232, 239; 657 NW2d 147 (2002). We review unpreserved claims of error to determine whether the claimed error amounted to plain error that affected the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The test for prosecutorial misconduct is whether the prosecutor abandoned his or her duty to seek justice and, in so doing, deprived the defendant of a fair trial. *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). It is the role of the prosecutor to seek justice and not merely to procure convictions. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).

---

[1] Although "the decisions of lower federal courts and other state courts are not binding on this Court, they may be considered as persuasive authority." *People v Walker*, 328 Mich App 429, 444-445; 938 NW2d 31 (2019) (quotation marks and citation omitted).

MRE 611(d)(1) provides that "[l]eading questions should not be used on direct examination except as necessary to develop a witness's testimony."[2]  A leading question is one "that suggests the answer to the person being interrogated[.]"  *Black's Law Dictionary* (11th ed).  See also *People v Hodge*, 141 Mich 312; 104 NW 599 (1905) (identifying a leading question as one that suggests the answer desired).  Questions that call attention to subjects about which testimony is desired but do not suggest the answers expected are not leading.  *Id*. at 314.

A trial court has some discretion in allowing leading questions so as to comply with MRE 611(a), which requires the court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."  See also MCL 768.24 ("Within the discretion of the [trial] court no question asked of a witness shall be deemed objectionable solely because it is leading.").  Even when a question is clearly leading, reversal is not warranted without a showing of "some prejudice or pattern of eliciting inadmissible testimony."  *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) (quotation marks and citation omitted).

Our review of the record reveals that some of the questions identified by defendant are not impermissible leading questions; they may call attention to subjects about which testimony is desired, but they do not suggest that a specific answer is expected.  See *Hodge*, 141 Mich at 312. The prosecutor's questions were for proper purposes such as developing, following up on, or clarifying a witness's testimony, or simply calling a witness back to his or her previous testimony. See MRE 611(d)(1).  In some instances, the prosecutor rephrased a question, even if the trial court had already overruled defense counsel's objection.  Some of the questions were clearly leading. However, defendant has not identified impermissible testimony.  For the most part, defendant's objections are to the form of the questions rather than to their content or to any testimony elicited by the questions.

The trial court allowed some leading questions to "move things along," and defendant contends that "moving things along" is not one of the sanctioned exceptions to the general rule that leading questions are not permitted.  It is true that the police witnesses were not the kind of witnesses of whom leading questions may be asked.  See, e.g., *Susser*, 254 Mich App at 239 (noting that "a trial court may allow a fair amount of leeway in asking questions of elderly and infirm witnesses"); *Watson*, 245 Mich App at 587 (finding no error in the prosecutor's use of leading questions with a seven-year-old witness).  However, as already indicated, the trial court has a responsibility to exercise reasonable control over the mode of interrogating witnesses to "make the interrogation and presentation effective for the ascertainment of the truth" and to "avoid needless consumption of time . . . ."  MRE 611(a)(1) and (2).

In sum, few of the questions to which defendant objects on appeal are impermissible leading questions.  Defendant has not applied the general statements of law upon which he relies

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024.  See ADM File No. 2021-10, 512 Mich lxiii (2023).  This opinion relies on the version of the rules in effect at the time of the trial.

to the facts of this case to show prejudice, nor has he identified any impermissible testimony resulting from the questions to which he objects. Defendant has not shown that the prosecutor's questions to which he objected in the trial court deprived him of a fair trial, nor has he established plain error affecting his substantial rights with regard to the questions to which he did not object in the trial court. And, absent a showing of some "prejudice or pattern of eliciting inadmissible testimony," reversal is not warranted. *Watson*, 245 Mich App at 587.

Defendant also contends that the prosecutor committed prosecutorial misconduct by interjecting irrelevant issues into the trial. Defendant focuses specifically on questions regarding the police witnesses' training and experience and on mention of the word "narcotics." Neither of these claims of error have merit. Because defendant did not object to questions eliciting the training and experience of police witnesses, this claim of prosecutorial misconduct is reviewed under the plain-error standard. See *Carines*, 460 Mich at 763.

Defendant claims that the police witnesses' training and experience was irrelevant and that eliciting testimony about their training and experience was a tactic that the prosecutor used to bolster their testimonies at defendant's expense. To the contrary, the training and experience of the canine-handling officer was highly relevant. The parties spent considerable time addressing how dog tracking worked. Defense counsel sought to undermine the effectiveness of canines as a police resource by focusing on whether the dog led officers to defendant. Defense counsel summed up the view of dog tracking that he was trying to convey to the jury when he told the jury in his closing argument that the dog-tracking evidence was "worthless evidence." Considering the role that the canine track played in locating defendant, the training and experience of the handler was highly relevant to aid the jury in determining how to weigh the dog-tracking evidence.

Similarly, testimony about the training and experience of the other police witnesses was also relevant. Defense counsel sought to establish through cross-examination of the police witnesses that there had been a second, viable subject whom police too quickly dismissed as a suspect. Counsel returned to the theme of an insufficiently conducted investigation in his closing argument when he told the jury that the police did not pursue other subjects, even though their actions were similar to defendant's. Asking the police witnesses about their training and background was in anticipation of defense counsel's insinuations of an incomplete investigation and aided the jury in determining the weight to give the officers' testimonies. Therefore, defendant has not established that the prosecutor's questions constituted plain error that affected defendant's substantial rights.

Defendant also asserts that the prosecutor committed misconduct by introducing "narcotics" into the trial. As defendant points out, the word "narcotic" was first mentioned by the canine handler when she testified that Kalamazoo Department of Public Safety canines are trained in "tracking, narcotic work[,] and building searches." "Narcotic" or "narcotics" was mentioned several additional times as the canine handler explained the different certifications that police dogs receive and how the dogs' various activities are characterized. Defendant contends that repeated use of "narcotic" or "narcotics" was prejudicial because narcotics were not involved in this case, and, therefore, repeated use of the word was an intentional attempt by the prosecutor to make the jury think that defendant committed the robbery because he was a drug addict. Defendant asserts the evidence of the prosecutor's intent was her statement to a police witness that, "You've mentioned a little bit on the narcotics which is a part of this case…."

Narcotics were not part of this case. The prosecutor suggests on appeal that the prosecutor's mention of narcotics was an error in the transcript. This makes sense given that defendant is not charged with any drug crime. The prosecutor never mentioned "narcotics" or "drugs" again after eliciting the canine handler's foundational testimony, including that she did not mention them in her closing argument. The question posed after the mention of narcotics was about the canine's role in apprehending a suspect. And the police witness's answer had nothing to do with narcotics. To the extent that the statement was an error, and considering the entire record, defendant has not shown the error was so prejudicial as to affect his substantial rights. Furthermore, the error was arguably cured by the trial court's instructions to the jury to consider only the evidence, and that the lawyers' questions to the witnesses were not evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; NW2d 836 (2003).

### 3. JUDICIAL MISCONDUCT

Defendant next contends that the trial judge's conduct deprived him of a fair trial by piercing the veil of impartiality. Defendant asserts that the trial court's sua sponte interventions in defense counsel's cross-examinations improperly influenced the jury by creating the appearance of bias against defendant. Because this issue comes to us unpreserved, our review is for plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763.

Trial courts have wide, but not unlimited, discretion over trial conduct. *People v Paquette*, 214 Mich App 336, 340; 543 NW2d 342 (1995). When reviewing the trial court's conduct, portions of the record should not be taken out of context. *Id*. Rather, the record should be read as a whole. *Id*. "When a case is tried before a jury, the judge must take care that his questions or comments do not indicate partiality." *People v Pointer*, 133 Mich App 313, 316-317; 349 NW2d 174 (1984).[3] We will order a new trial when "such comments quite possibly could have influenced the jury to the detriment of defendant's case." *Id*. at 316-317. "A judge's conduct pierces [the veil of impartiality] and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *People v Swilley*, 504 Mich 350, 370; 934 NW2d 771 (2019) (quotation marks and citation omitted).

Neither the record as a whole nor the isolated examples that defendant provides supports the conclusion that the trial court's conduct improperly influenced the jury. The record shows that several of the trial court's comments responded to defense counsel's statements that were deemed argumentative. Other examples were statements that the trial court directed toward witnesses. Several statements were requests to defense counsel to rephrase questions for clarity. Although the trial court intervened during defense counsel's cross-examinations more than it did during the

---

[3] This Court is not strictly required to follow opinions decided before November 1, 1990, but they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases. MCR 7.215(J)(1); *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

prosecution's cross-examinations, defense counsel's cross-examinations were longer. To the extent that the trial judge's tone and demeanor can be discerned from the record, nothing about the language that she used suggests that she was argumentative, disrespectful, or adopted a controversial tone. See *id*. at 381 (indicating that a judge's tone may be gleaned from his or her word choice). That the trial judge was not hostile to defendant or defense counsel is also illustrated by several cordial exchanges that the trial court had with defense counsel. As a whole, the record does not reflect the type of circumstances in which a judge has been found to have pierced the veil of impartiality. See, e.g., *id*. at 374-375; *People v Stevens*, 498 Mich 162, 181-183; 869 NW2d 233 (2015) (trial judge repeatedly questioned witnesses and pointed out inconsistencies in testimony). To the contrary, what emerges from the transcripts is the image of a hands-on judge exercising control over the mode and order of presenting evidence in accordance with MRE 611(a).

Defendant has not established that the prosecutor's manner of questioning constituted prosecutorial misconduct. Nor has defendant established plain error arising from the prosecution's alleged introduction of irrelevant issues into the trial. Defendant also has not established that the trial court's interventions in defense counsel's cross-examination pierced the veil of impartiality. Lastly, when viewed objectively, the trial judge's endorsement of the prosecutor for a judicial position did not warrant disqualification under MCR 2.003(C)(1)(b). Having failed to establish his claims of judicial misconduct and prosecutorial misconduct, defendant's claim of a due-process violation on the basis of these alleged errors also fails.

## B. IRRELEVANT AND PREJUDICIAL EVIDENCE

Defendant next asserts that the prosecutor also committed prosecutorial misconduct by including in her case-in-chief a demonstration designed to create sympathy for the victim and inflame the passions of the jury. We disagree.

Relevant evidence is generally admissible, and irrelevant evidence is inadmissible. MRE 401; MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, even relevant evidence may be excluded under MRE 403 if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Weighing probative value against prejudicial effect requires balancing factors that include the following:

> the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. [*People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).]

Evidence is unfairly prejudicial when there is a risk that "marginally probative evidence will be given undue or preemptive weight by the jury." *People v Mardlin*, 487 Mich 609, 618-619; 790 NW2d 607 (2010) (citation omitted).

Defendant argues the prosecutor committed misconduct, and the trial court erred, by allowing Officer Caleb Dumond to remove the SAR nine-millimeter handgun found in the building where defendant was hiding from its sealed evidence package and show the jury what the gun looked like when the slide was pulled back and when it was not. Officer Dumond removed the gun from its sealed evidence bag and double checked the weapon to be sure that it was safe and that no round was in the chamber. He then held the gun up so the jury could see the side of the gun with the slide forward and the slide in a locked position, and he pointed out the two silver barrels when the slide was in each position. Officer Dumond testified that when the slide was in the forward position and the gun was pointed at someone, the front of the silver barrels, one of which was the recoil spring, would be noticeable against the black contrast of the firearm.

The gun demonstration was relevant to the victim's credibility. See *People v Spaulding*, 332 Mich App 638, 660; 957 NW2d 843 (2020) ("Credibility of a witness is almost always at issue, and, thus, evidence bearing on that credibility is always relevant."). The victim gave slightly different descriptions of the gun on the night of the robbery, during the preliminary investigation, and at trial, which became a sharply contested issue on the second day of trial. By giving the jury a better idea of how the gun looked and worked, the demonstration helped the jury assess the victim's credibility. The demonstration was not cumulative, as no photograph of the barrel of the gun had been admitted into evidence. Thus, the demonstration was of more than minimal probative value. We conclude that defendant has not established that the trial court abused its discretion by allowing the demonstration. In addition, a claim of prosecutorial misconduct cannot be predicated on a good-faith effort to admit evidence. See *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999).

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts in a Standard 4 Brief that defense counsel rendered ineffective assistance when he failed to challenge the search warrant used to obtain his DNA on grounds that it lacked the signature and bar number of a neutral and detached magistrate. This claim is without merit.

In order to establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. See *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defendant has not made this showing.

The warrant was signed and dated by a neutral and detached magistrate. Defendant has given us no reason to believe that the signature and partial bar number on the search warrant are not legitimate. Although the magistrate's signature may be illegible to those unfamiliar with it, defendant has presented no authority, nor have we found any, expressly requiring a magistrate to have a legible signature. The bar number is missing the last number. But MCL 780.651, the statute governing the issuance of search warrants, does not require that a magistrate put his or her bar number on the search warrant. Because defendant has not established that the search warrant was invalid, he cannot establish that defense counsel's failure to challenge the warrant on these grounds constituted deficient performance. Therefore, his claim of ineffective assistance of counsel fails. See *Trakhtenberg*, 493 Mich at 51.

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani